**PRINCE, YEATES & GELDZAHLER**
Thomas R. Barton (6827) (tbarton@princeyeates.com)
Sally B. McMinimee (5316) (sbm@princeyeates.com)
Alex B. Leeman (12578) (aleeman@princeyeates.com)
G. Troy Parkinson (9011) (gtp@princeyeates.com)
15 West South Temple, Suite 1700
Salt Lake City, Utah  84101
Telephone:  (801) 524-1000
Facsimile: (801) 524-1098

*Attorneys for the Receiver*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ELITE IT PARTNERS, INC., a Utah corporation doing business as ELITE IT HOME, and JAMES MICHAEL MARTINOS, individually and as an officer of ELITE IT PARTNERS, INC.,<br><br>Defendants. | **RECEIVER'S RESPONSE TO EMERGENCY MOTION TO LIMIT RECEIVER'S AUTHORITY**<br><br>Civil No. 2:19-cv-00125-RJS<br><br>Hon. Robert J. Shelby |

Thomas R. Barton, court-appointed temporary receiver ("Receiver") over Elite IT Partners, Inc. ("Elite IT Partners"), and each of its subsidiaries, affiliates, successors and assigns (collectively the "Receivership Entities"[1]), submits the following Response to the Emergency Motion to Limit Receiver's Authority ("Motion to Limit Authority").

---

[1] The Receivership Entities includes Elite IT Partners as well as any other entity that has conducted any business related to the marketing or sale of its technical support products and services, including receipt of Assets derived from any activity that is subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any other defendant in this matter.

1

## FACTUAL BACKGROUND

With regard to factual issues, the Receiver has submitted his Declaration in Response to Emergency Motion to Limit Receiver's Authority. The contents of that declaration are incorporated herein, and demonstrate why the Motion to Limit Authority should be denied.

## ARGUMENT

### I. Mr. Martinos and His Counsel Lack Authority to Take Any Action on Behalf of Elite IT Partners

The Motion to Limit Authority is submitted on behalf of Mr. Martinos *and* Elite IT Partners. Nothing prohibits Mr. Martinos from asserting the Motion to Limit Authority, but neither he nor his counsel have the authority to assert it on behalf of Elite IT Partners. The TRO vests that authority in the Receiver. The Receiver did not authorize the Motion to Limit Authority and in fact opposes it.

Section XIV.A of the Order of the TRO directs the Receiver to

> **Assume full control of Receivership Entities by removing**, as the Receiver deems necessary or advisable, any **director, officer**, independent contractor, employee, **attorney**, or agent of any Receivership Entity **from control of, management of, or participation in the affairs of the Receivership Entity**.

(Emphasis added.) Further, Section XVIII, entitled "Non-Interference with the Receiver" states that "**Defendants**; Receivership Entities; **Defendants'** or Receivership Entities' **officers,** agents, employees, **attorneys**, and all other persons in active concert or participation with any of them, who receive actual notice of this Order; and any other person served with a copy of this Order, **are hereby restrained and enjoined** from directly or indirectly … [] B. **Transacting any of the business of the Receivership Entities**."

Courts have recognized that, where a receiver has been appointed, the officers and attorneys for the entity over which the receivership is imposed have no standing to pursue

litigation on behalf of the entity. *See S.E.C. v. Quest Energy Management Group, Inc.,* 768 F.3d 1106, 1109 (11th Cir. 2014) ("When the district court expanded the receivership to include Quest, it forbade the Downeys from taking any action on behalf of Quest and instead vested the legal rights and interests of Quest in the receiver. Based on the plain language of that order, the Downeys lack standing to appeal in the name of Quest"); *NLG, LLC v. Selective Advisors Group, LLC*, 2018 WL 638349, at *2 (S.D.Fla., 2018) ("Where a receivership order vests the legal rights and interests of the company in the receiver, others lack standing to appeal in the company's name … The plain language of Judge Gordo's order vests all legal rights and interests and authority to act on behalf of NLG in the receiver.")

Based on the plain language of the TRO, neither Mr. Martinos nor his counsel have any authority to act on behalf of Elite IT Partners in this case or any other case. In fact, the TRO "restrains and enjoins" them from doing so. All rights and legal interests in Elite IT Partners, and the authority to act on its behalf, are vested in the Receiver. The Receiver does not, and has not, authorized any action by Mr. Martinos or his attorneys, and does not intend to expend any Receivership funds to pay associated fees or expenses. If the Court takes a different view of the Receiver's authority—and that of Mr. Martinos and his attorneys—the Receiver respectfully requests that the Court clarify the meaning of the applicable provisions of the TRO.

## II. The Motion to Limit Receiver's Authority Should Be Denied.

In the TRO, Finding of Fact, B, the Court made preliminary findings that Elite IT Partners has made false representations to consumers that their "computers are infected with viruses and infections that threaten the security of consumers' personal information and prevent them from accessing their email and other accounts, and that they are part of, affiliated with, or authorized to provide services for well-known U.S. technology companies." The Court has

restrained Elite IT Partners from making further misrepresentations in this regard, and from misrepresenting any other material fact to consumers regarding any good or service. TRO, Order: §§ I and II. The Court has also restrained Elite IT Partners from charging or billing for any technical support products or services ("TSPS") marketed to consumers under the name Elite IT Home. TRO, Order, § III; Definitions, K. The Court has also instructed the Receiver to conserve, hold, manages and prevent the loss of Receivership assets. TRO, Order: § XIV.D.

Under these circumstances, the Receiver does not believe the request in the Motion to Limit Authority—having the Receiver "act solely as a monitor" over Elite IT Partners while allowing it to "service its existing customers"—is compatible with the provisions of the TRO. In the Receiver's view, allowing Elite IT Partners' technicians and customer support representatives to continue to provide services would put them in a position to make the same (or similar) misrepresentations that the Court has restrained and enjoined. Receiver's Declaration [Docket No. 34], ¶ 15.

Also, Elite IT Partners is no longer charging or billing for the services that Defendants are asking the Court to allow them to provide. In the Receiver's estimation, the cost of providing such services would be well over $30,000 per month. Receiver's Declaration, ¶¶ 10-14. Thus, the provision of such services would be a drain on the Receivership assets and would be contrary to the Court's direction that the Receiver conserve and prevent the loss of Receivership assets. TRO, Order: § XIV.D. The Receiver does not believe he can perform his duties, as described by the Court in the TRO, if twenty (approximately) of Elite IT Partners' workers are back at their computers, getting paid, and doing what they were doing before.

The Receiver is sensitive to ongoing harm to Elite IT Partners' customers. But the Receiver does not believe the ongoing harm to Elite IT Partners' consumers, if any, is undue.

Again, these customers are no longer paying for services from Elite IT Partners. Moreover, it is the Receiver's understanding that the software installed by Elite IT Partners on its consumers' computers should not stop working simply because Elite IT Partners is not providing ongoing TSPS. The Receiver intends, at least in the short term, to continue paying the licensing fees for such software. *Id*. at ¶¶ 20-22. Elite IT Partners' chief technical officer has confirmed that, under these circumstances, customers will not lose data and their systems will not shut down or fail. *Id*. at ¶¶ 17-19. Initial contacts with the providers of the software themselves—such as Trend Micro, which provides the antivirus software—indicate that these providers have their own customer service departments than could provide assistance to Elite IT Customers. *Id*. at ¶ 23. In the coming days, the Receiver intends to continue to investigate these types of solutions for Elite IT Customers and communicate them to the customers. If there are other ways, within the confines of the existing TRO, to efficiently provide support to consumers, if any, whose needs are truly emergent, the Receiver is willing to consider such options.

## **CONCLUSION**

For the reasons stated herein, the Court should deny the Motion to Limit Authority and confirm that Mr. Martinos and his attorneys have no authority to act on behalf of Elite IT Partners in this case or any other case.

DATED this 11th day of March, 2019.

/s/ Thomas R. Barton
Thomas R. Barton, Esq.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **RECEIVER'S RESPONSE TO EMERGENCY MOTION TO LIMIT RECEIVER'S AUTHORITY** was filed with the Court's e-filing service this 11th day of March, 2019, which sent notice to the following:

Amanda R. Grier (agrier@ftc.gov)
Colleen B. Robbins (crobbins@ftc.gov)
Elsie B. Kappler (ekappler@ftc.gov)
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-8528
Washington, DC 20580

*Attorneys for the Federal Trade Commission*


Brett L. Tolman (btolman@rqn.com)
Eric G. Benson (ebenson@rqn.com)
Z. Ryan Pahnke (rpahnke@rqn.com)
Katherine Priest (kpriest@rqn.com)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385

*Attorneys for Elite IT and James Martinos*


/s/ Alex B. Leeman

4832-3147-3034, v. 3