Brett L. Tolman (No. 8821)
Eric G. Benson (No. 10414)
Z. Ryan Pahnke (No. 11146)
Katherine E. Priest (No. 14758)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah  84111
Telephone:  (801) 532-1500
Fax:     (801) 532-7543
Email: btolman@rqn.com
       ebenson@rqn.com
       rpahnke@rqn.com
       kpriest@rqn.com

*Attorneys for James Michael Martinos and Elite IT Partners, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ELITE IT PARTNERS, INC., a Utah corporation doing business as ELITE IT HOME, and JAMES MICHAEL MARTINOS, individually and as an officer of ELITE IT PARTNERS, INC.,<br><br>Defendants. | **MOTION TO RELEASE FUNDS FOR PAYMENT OF ATTORNEY FEES**<br><br>Case No. 2:19-cv-00125<br><br>Chief District Judge Robert J. Shelby |

## RELIEF SOUGHT AND GROUNDS FOR MOTION

Defendant James Michael Martinos ("Martinos"), by and through undersigned counsel, hereby moves the Court for an order to release $250,000 from the funds that are subject to the Court's *Ex Parte* Temporary Restraining Order, With Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief ("Freeze Order") that was entered by this Court

on February 27, 2019.[1] In the alternative, Martinos requests an order releasing the funds held by the Temporary Receiver as part of the Freeze Order that were generated by Elite IT's line of business servicing business-to-business clients.

This motion is made on the grounds that the Freeze Order prevents Martinos from maintaining the legal representation that is necessary to present a competent defense in this complex matter unless some funds subject to the Freeze Order are released. Releasing funds for a defense is proper in this case because Martinos disputes the law and one-sided facts submitted to the Court by the Federal Trade Commission ("FTC") to obtain the *ex parte* Freeze Order in this case. However, in order to properly present a full and proper defense to the Court at the April 29, 2019 Preliminary Injunction hearing, Martinos must maintain and have the ability to pay for legal representation.

In addition, the FTC has acknowledged that the evidence does not support, and therefore does not allege, that Elite IT engaged in any fraudulent or unlawful behavior in engaging in its business-to-business line of business. In fact, the Freeze Order specifically carves out this line of business where it defines Technical Support Product(s) and Service(s) on page 5 as only those services "marketed to consumers under the name 'Elite IT Home.'" Where it is undisputed that funds for servicing business-to-business clients were acquired lawfully and legitimately, those funds held by the Temporary Receiver under the Freeze Order should be released immediately for the purpose of allowing Martinos to present a competent defense at the Preliminary Injunction hearing and beyond.

---

[1] Dkt. No. 15.

## BACKGROUND

1. On February 25, 2019, the FTC filed a complaint against Elite IT and Martinos alleging violations the FTC Act, the Telemarketing Sales Rule, and ROSCA, and various other claims for relief.[2]

2. Simultaneous with the Complaint, the FTC filed a motion for *ex parte* TRO with asset freeze and other equitable relief, including the appointment of a receiver.[3]

3. On February 27, 2019, the Court granted the FTC's *ex parte* TRO Motion and entered the Freeze Order, which froze all of Defendants' assets and appointed the Temporary Receiver.[4]

4. Martinos retained the Salt Lake City law firm of Ray Quinney & Nebeker to represent him as it relates to this matter.[5]

5. Martinos desires that Ray Quinney & Nebeker continue representing him in this case. However, because of the Freeze Order, Martinos cannot pay legal fees to present a full defense at the Preliminary Injunction hearing.

6. In the *ex parte* TRO Motion, the FTC specifically carved out Elite IT's services provided to business consumers (as opposed to individual consumers) by defining the term "Tech Support Products and Services" as those services marketed under Elite IT's dba Elite IT Home, and

---

[2] Dkt. No. 1.
[3] Dkt. No. 9.
[4] Dkt. No. 15.
[5] Although the Freeze Order allows Defendants (defined as both Elite IT Partners, Inc. and James Michael Martinos) to disclose certain information to "their attorneys as required for their defense (p. 8)," the Freeze Order also appointed the Temporary Receiver without notice and gave him full control over Defendant Elite IT, depriving Elite IT of the opportunity to retain attorneys and to mount a defense to the FTC's allegations against it as contemplated earlier in the Freeze Order, leaving Mr. Martinos to defend the company he owns through his own defense.

3

acknowledged that at least 7% of Elite IT's revenues are attributable to its business-to-business clients.

7. Based on the Receiver's review of Elite IT's business records since his appointment, in 2017 and 2018, Elite IT's business-to-business clients generated approximately $300,000 in revenue, which represents slightly less than 10% of Elite IT's total revenues for those years. However, based on numbers for 2019, the Receiver believes that Elite IT's business-to-business revenue will increase due to the addition of two new accounts.[6]

8. At the hearing before this Court on March 12, 2019, the Temporary Receiver stated that Elite IT is continuing to service its business-to-business clients.

## ARGUMENT

### I. THE TEMPORARY RECEIVER SHOULD BE ORDERED TO RELEASE FUNDS FOR MARTINOS' DEFENSE.

Martinos requests that the Court release the necessary funds to permit him to maintain counsel to defend the FTC's claims. Injunctive relief in the form of the Freeze Order, including considerations governing the appointment of a receiver, is equitable in nature. The equities in this case do not favor the Freeze Order or the premature dismantling of Elite IT's ongoing and profitable business at the hand of the Temporary Receiver. If Martinos is unable to prepare and present a defense in this case, the legitimate business interests and dealings of Elite IT will undoubtedly be harmed. And as the Court acknowledged at the hearing on March 12, 2019, it has only seen the FTC's side of the story thus far and has not had the opportunity to see Defendants' arguments and defenses in this action. Thus, the equities support releasing funds for

---

[6] Dkt. No. 34.

4

Martinos' defense because he is unable to pay the expenses of maintaining legal representation absent the release of funds subject to the Freeze Order.

A district court has discretion regarding the release of frozen funds to pay for attorney's fees. *See, e.g., Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987); *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989). Courts have included terms in TRO and preliminary injunction orders to account for the cost of attorney's fees because "such provisions are necessary to enable defendants to obtain representation against the FTC's charges." *FTC v. QT Inc.*, 467 F. Supp. 2d 863, 866 (N.D. Ill. 2006). In determining whether to order funds released for attorney's fees, factors may include the terms of any TRO/preliminary injunction, the availability of other funds, the availability of funds to redress any alleged victims, whether issues of fact exist regarding liability, and reasonableness of the fees. *Id.* Beyond the terms of the *ex parte* TRO, courts consider the availability of other funds and the underlying fairness of court proceedings if the defendant was unable to retain counsel. *See e.g., SEC v. Dowdell*, 175 F. Supp. 2d 850, 856 (W.D. W. Va. 2001); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988). As evidenced by the financial disclosures already provided to the FTC, little or no funds are available to Defendants to maintain a legal defense, other than those subject to the Freeze Order.

Martinos respectfully submits that a release of funds for legal fees is warranted here. If the Court refuses to release funds subject to the Freeze Order which would enable Martinos to present a competent defense in this matter, the inevitable result would be the termination of Elite IT's business before Martinos had any opportunity to properly defend against the FTC's allegations. Even though this Court has stated that the FTC initially provided sufficient support

for its *ex parte* application for injunctive relief to justify entry of the Freeze Order, the Court should still order that the Temporary Receiver release $250,000.00 from the frozen assets under his control to allow Martinos to prepare and present his defense to the FTC's claims. Doing so would be in line with a number of courts that have recognized the equities in such situations, resulting in order releasing otherwise frozen assets when those assets are required for the payment of personal or legal expenses. *See, e.g., S.E.C. v. Duclaud Gonzalez de Castilla,* 170 F.Supp.2d 427, 430 (S.D.N.Y 2001); *Dowdell*, 175 F.Supp.2d at 855-56 (W.D.Va. 2001). In this case, Martinos' request for the release of funds for fees should be granted because he has colorable arguments in opposition to the FTC's claims and Martinos will not be able to properly pursue and present his defense in the absence of access to a portion of the assets subject to the Freeze Order in order to continue with competent counsel.

In *Duclaud*, the court released a portion of otherwise frozen assets for the defendants' payment of legal expenses after the court issued an *ex parte* TRO and froze defendants' assets. *See* 170 F.Supp.2d at 429. In response to the individual defendants' motion to release funds, the court modified the freeze order to allow the individual defendants to pay their legal fees in disputing the evidentiary basis of the TRO. *Id.*; *see also United States v. Petters*, CIV 08-5348 ADM/JSM, 2009 WL 803482, *4 (D. Minn. Mar. 25, 2009) ("[I]n the interest of providing Defendant [] with the opportunity for a full and fair hearing on the merits in this complex case, and in the absence of other sources available to Defendant [] to secure counsel, the Court will authorize payment for attorney fees reasonably and necessarily incurred in Defendant[s'] defense.").

Here, Martinos disputes the FTC's allegations in support of its *prima facie* case to justify the entry of the Freeze Order.  Martinos also disputes that he or Elite IT committed any violations of law as alleged by the FTC.  At this point, a refusal to release a portion of the frozen assets to Martinos in order to defend against the FTC's allegations would deprive Martinos of the ability to present a meaningful defense, would preclude Martinos from pursuing the dissolution of the Freeze Order and prevention of the entry of a preliminary injunction order, and would destroy his ability to meaningfully participate in all subsequent proceedings in this case.  *See Dowdell*, 175 F.Supp.2d at 856 ("This court's central concern is the fairness of the proceedings.  The court does not believe that it could achieve a fair result at a preliminary injunction hearing were it to deny defendants the ability to retain counsel.")  When dealing with complex legal matters, such as those that have been alleged by the FTC in this case, "lawyers are essential to the presentation of issues" likely to come before the Court.  *Id*.  Depriving Martinos of the opportunity to retain and maintain properly skilled and prepared legal representation throughout the course of this matter will prevent the FTC, the Temporary Receiver, the Court, Elite IT's customers, as well as Martinos and Elite IT, from the opportunity to efficiently and effectively litigate the claims that have been raised by the FTC in this case.

## II. AT A MINIMUM, THE COURT SHOULD RELEASE BUSINESS-TO-BUSINESS FUNDS.

As an alternative to the Court releasing the full $250,000.00 requested by Martinos above, Defendants request that those funds generated by Elite IT related to its business (as opposed to consumer) clients be released immediately as those funds should not be part of the receivership estate, or subject to any asset freeze.  Money generated by Elite IT's business activities outside of the scope of the relief sought by the FTC against Elite IT were specifically

7

exempted by the FTC in their *ex parte* TRO Motion and Freeze Order.  The FTC has acknowledged that the evidence does not support, and therefore does not allege, that Elite IT engaged in any fraudulent or unlawful behavior in engaging in its business-to-business line of business.  In fact, the Freeze Order specifically carves out this line of business where it defines Technical Support Product(s) and Service(s) on page 5 as only those services "marketed to consumers under the name "Elite IT Home."  Such funds represent just under 10% of all proceeds generated by Elite IT.  Because it is undisputed that funds received by Elite IT for servicing business-to-business clients were acquired lawfully and legitimately, those funds held by the Temporary Receiver under the Freeze Order should be released immediately for the purpose of allowing Martinos to present a competent defense at the Preliminary Injunction hearing.

## CONCLUSION

For the reasons stated above, Elite IT respectfully requests that this Court order that funds subject to the Freeze Order be release as requested above.

DATED this 20th day of March, 2019.

**RAY QUINNEY & NEBEKER P.C.**

*/s/ Brett L. Tolman*
Brett L. Tolman
Eric G. Benson
Z. Ryan Pahnke
Katherine E. Priest
*Attorneys for James Michael Martinos and Elite IT Partners, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2019, I electronically submitted the foregoing **MOTION TO RELEASE FUNDS FOR PAYMENT OF ATTORNEY FEES** to the Clerk of the Court using the EC/ECF system, which sent notification of such filing to the following:.

    Amanda R. Grier
    Collen B. Robbins
    Else B. Kappler
    Federal Trade Commission
    Division of Marketing Practices
    600 Pennsylvania Avenue, NW, CC-8528
    Washington, DC 20580

    Alex B. Leeman
    G. Troy Parkinson
    Thomas R. Barton
    Prince Yeates & Geldzahler
    15 W. South Temple, Suite 1700
    Salt Lake City, UT 84101

                                          /s/ Dawn E. Bouvier

1483657