IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ELITE IT PARTNERS, INC., a Utah corporation doing business as ELITE IT HOME, and<br><br>JAMES MICHAEL MARTINOS, individually and as an officer of ELITE IT PARTNERS, INC.,<br><br>    Defendants. | **ORDER DENYING MARTINOS' MOTION TO RELEASE FUNDS FOR PAYMENT OF ATTORNEY'S FEES**<br><br>2:19-cv-125<br><br>Chief District Judge Robert J. Shelby |

    This case stems from an alleged computer-service fraud. On March 20, 2019, Defendant James Michael Martinos filed the Motion currently before the court, seeking the expedited release of funds for payment of attorney's fees.[1] In particular, Martinos seeks the release of $250,000 from receivership funds or, in the alternative, an unspecified amount of receivership funds generated by Defendant Elite IT Partners Inc.'s business-to-business operations.[2] Martinos asserts the release of receivership funds is necessary to pay for a full and proper defense at the forthcoming preliminary injunction hearing scheduled for April 29, 2019.[3]

    On the same day Martinos filed his Motion, the court granted his request for an expedited briefing schedule, requiring Defendant Federal Trade Commission (FTC) to file its opposition no

---

[1] Dkt. 49.

[2] *Id.* at 1–2.

[3] *Id.* at 2.

later than March 27, 2019.[4] The FTC and court-appointed Receiver timely filed oppositions to Martinos' Motion.[5] They argue, and the court agrees, the equities tip in favor of denying Martinos' Motion.[6]

The court has discretion to release receivership funds to pay for an individual defendant's attorney's fees.[7] Factors this court considers in exercising its discretion include the:

1) defendant's access to non-receivership funds when the temporary restraining order (TRO) was issued, as well as his or her efforts to earn, borrow, or otherwise obtain funds to pay for attorney's fees since the TRO's issuance;[8]

2) source of the requested receivership funds;

3) reasonableness of the requested receivership funds in view of prevailing market rates, the complexity of the case, and the number of hours required to mount a proper defense;

4) likelihood of a subsequent criminal indictment;[9]

5) purpose and terms of the TRO and asset freeze;

---

[4] Dkt. 50.

[5] Dkts. 61, 60, respectively.

[6] *See generally* Dkts. 60, 61.

[7] *F.T.C. v. Think Achievement Corp.*, 312 F.3d 259, 262 (7th Cir. 2002); *C.F.T.C. v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 778 (9th Cir. 1995); *F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987); *C.F.T.C. v. Morse*, 762 F.2d 60, 63 (8th Cir. 1985); *C.F.T.C. v. Am. Metals Exch. Corp.*, 991 F.2d 71, 79 (3d Cir. 1993).

[8] *Dixon*, 835 F.2d at 565 (recognizing the "basis of our adversary system is threatened when one party gains control of the other party's defense" and concluding that "some kind of an allowance must be made to permit each defendant to pay reasonable attorneys' fees if he is able to show that he cannot pay them from new or exempt assets; the burden, however, will be on the defendant to satisfy the court that he can secure the services of an attorney *only if* assets subject to the freeze order are released.") (emphasis added); *see U.S. v. Payment Processing Ctr., LLC.*, 439 F. Supp. 2d 435, 440 (E.D. Pa. 2006).

[9] Although the Sixth Amendment only gives defendants the right to counsel in criminal proceedings, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963), a high likelihood of subsequent criminal indictment weighs in favor of the release of receivership funds because evidence obtained and arguments made in a civil suit may affect rights the U.S. Constitution affords criminal defendants. *See, e.g., F.T.C. v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988).

6) strength of the evidence supporting the TRO and asset freeze;[10] and

7) amount needed to redress the alleged victims compared to that amount's current availability.[11]

Because it is the defendant who seeks relief, the defendant carries the evidentiary burden to demonstrate the equities tip in favor of the release of receivership funds.[12]

At the moment, every relevant factor tips in favor of denying Martinos' Motion. First and most importantly, Martinos fails to show he cannot obtain funds from other sources to fund his legal defense. Martinos supplies no testimony or evidence describing any efforts to finance his legal expenses through new employment, available lines of credit, loans, or any other potential sources of funds.[13] In contrast, the FTC presents evidence Martinos has access to

---

[10] *See Think Achievement Corp.*, 312 F.3d at 262 ("It was okay for the district court, *prior* to the entry of the final judgment against [Defendant], to permit some of the frozen assets to be used to pay the lawyer who was defending him against the FTC's suit. For there was not yet a judicial determination of what fraction of those assets was legitimate wealth of [Defendant] and what fraction represented proceeds of fraud to which he had no equitable entitlement. But once the court determined that *all* the frozen assets were either a product of fraud or necessary to compensate the victims of the fraud for their losses, [Defendant] had no right to use any part of the frozen money for his own purposes, purposes that included defending himself against criminal charges. Even if he has no other money (which is unclear), he will not go undefended, since an indigent criminal defendant is entitled to a defense paid for by the government.") (emphasis in original) (citations omitted).

[11] *See C.F.T.C. v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) ("According to the record, the frozen assets fell far short of the amount needed to compensate Noble's and Moorgate's customers. This was reason enough in the circumstances of this case for the district court, in the exercise of its discretion, to deny the attorney fee application. We do not, however, intimate that attorney fee applications may always be denied where the assets are insufficient to cover the claims. Discretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made.") (internal citation omitted); *C.F.T.C. v. Morse*, 762 F.2d 60, 63 (8th Cir. 1985) (explaining it would be inequitable to approve defendant's request for payment of attorney fees out of the receivership estate because "only $42,000 remains to satisfy approximately $1,200,000 worth of claims of disappointed investors").

[12] The parties do not identify legal authority establishing the factors the court must consider, nor do they identify authority placing the burden on the moving or non-moving party. The court through its own research likewise did not identify such authority. To fill this void, promote judicial efficiency, and enhance predictability to litigants, the court explicitly states how it traditionally exercises its discretion when a defendant seeks the release of receivership funds to pay for his or her legal defense at a preliminary injunction hearing.

[13] *See* Dkt. 61, Ex. 1, at PX 33 at 1531 at ¶¶ 4, 9 (Declaration of FTC Paralegal) (stating responses from financial institution indicate at least one of Martinos' credit cards had $29,659 in available credit at the time of the response); *see also* Dkt. 63, Ex. 1 (Supplemental Declaration of FTC Paralegal) (indicating responses from financial institutions indicate Martinos has approximately $67,635.30 to draw on to cover his attorney's fees).

$67,635.30 to fund his legal defense.[14] Martinos' failure to supply evidence that the release of receivership assets is *necessary* to mount a legal defense belies his argument to the contrary. His unsupported assertion that the release of receivership funds is necessary is given no weight in the court's analysis. Whereas, the evidence offered by the FTC weighs in favor of denying Martinos' request because it demonstrates the release of funds is unnecessary.

Second, the bulk of the requested receivership funds originate from a corporate entity, Elite IT.[15] As a result, Martinos essentially requests the court to transfer corporate funds to pay for his legal defense at the expense of other shareholders. The interests of Elite IT's shareholders weigh in favor of denial.

Third, Martinos articulates no reason why he believes $250,000 is required to prepare his defense at a preliminary injunction hearing, let alone address the reasonableness of his request. He offers no information concerning hourly rates for his lawyers or paralegals, costs associated with experts or third party vendors, if any, nor any proposed budget estimating the anticipated time required to complete any tasks he believes are necessary to adequately prepare his preliminary injunction defenses. This failure to articulate how the funds will be used weighs in favor of denying Martinos' Motion.

Factor four is currently given no weight because none of the parties' arguments address the likelihood of subsequent criminal proceedings.

Fifth, the purpose of the TRO is to preserve the assets of receivership entities, and the TRO specifically states assets subjected to the asset freeze shall include "all assets of Defendants

---

[14] *See* supra *note* 13.

[15] A total of $19,842.24 in liquid assets in Martinos' name have been frozen. *See* Dkt. 61, Ex. 1, at PX 33 at 1531 at ¶ 6. This excludes funds in IRAs in Martinos' name and the equity in his home.

at the time this Order is entered."[16] Accordingly, the purpose and terms of the TRO weigh in favor of denying Martinos' Motion, including his request for the release of an unspecified amount of receivership funds generated by Elite IT's non-fraudulent, business-to-business operations.[17]

Sixth, the FTC supplies comprehensive and persuasive evidence in support of the TRO's issuance;[18] and evidence obtained during the FTC's ongoing investigation only bolsters the basis for the TRO's issuance.[19] The original evidence supporting the TRO, along with growing evidence that further supports the FTC's allegations, weighs in favor of leaving the TRO undisturbed.

Seventh, the amount needed to redress the alleged victims dwarfs the amount of receivership assets currently available. At this stage in litigation, preliminary evidence suggests the alleged victims suffered injury in an amount exceeding $10.7 million.[20] This figure far exceeds the $745,984 in receivership assets appearing available on the date the Receiver filed his Opposition to Martinos' Motion.[21] Because the amount required for full redress far exceeds receivership assets currently available, the interests of the alleged victims weigh strongly in favor of denial.

---

[16] Dkt. 15 at 9.

[17] The court is unable to carve out assets from the Elite IT's business-to-business operations because "the Company does not track the B2B and Home business lines separately and the expenses for each business line are commingled together." Dkt. 53 at 6 (Receiver's Financial Report).

[18] *See* Dkts. 9, 15.

[19] *See, e.g.*, Dkt. 33 and its exhibits.

[20] *See* Dkt. 61 at 4 (citing for example *F.T.C. v. Kuykendall*, 371 F.3d 745, 749 (10th Cir. 2004) (using a gross revenue method to measure victim injury during contempt proceedings) and Dkt. 9, Ex. 17 at PX 24 at ¶ 14 (Declaration of FTC's Forensic Accountant) (estimating Elite IT's consumer-side, gross revenue); *see also F.T.C. v. IAB Mktg. Assocs., LP*, No. 12-61830-CIV, 2013 WL 2433214, at *2 (S.D. Fla. June 4, 2013) ("The proper measure of ill-gotten gains is revenue, not profit.").

[21] Dkt. 58 at Pg. 3 at ¶ 10 (Declaration of Receiver).

Because every relevant factors tips against approval, Martinos' Motion is DENIED without prejudice.

SO ORDERED this 5th day of April, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge