Thomas R. Barton (6827)
Alex B. Leeman (12578)
Matthew J. Van Wagoner (16596)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
tbarton@parsonsbehle.com
aleeman@parsonsbehle.com
ecf@parsonsbehle.com
*Receiver and attorneys for Receiver*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ELITE IT PARTNERS, INC., and JAMES MICHAEL MARTINOS,<br><br>Defendants. | **SECOND APPLICATION AND DECLARATION OF RECEIVER THOMAS R. BARTON REQUESTING APPROVAL TO PAY FEES AND EXPENSES OF THE RECEIVERSHIP**<br><br>Case No. 2:19-cv-00125-RJS-CMR |

Thomas R. Barton, court-appointed receiver ("Receiver") over Elite IT Partners, Inc.

("Elite IT"), and each of its subsidiaries, affiliates, successors and assigns (collectively the

"Receivership Entities"[1]), hereby submits this application for approval to pay fees and expenses

of the Receivership ("Application"), and declares as follows:

---

[1]     The Receivership Entities, as defined in the Stipulated Preliminary Injunction Order as to Elite IT Partners, Inc. and James Michael Martinos [Dkt. 104] (the "Preliminary Injunction"), includes Elite IT as well as any other entity that has conducted any business related to the marketing or sale of its technical support products and services, including receipt of Assets derived from any activity that is subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any other defendant in this matter.  *See* Preliminary Injunction [Dkt. 104], pp. 4-5.

1.      On February 27, 2019, pursuant to an *ex parte* motion from Plaintiff the Federal

Trade Commission ("FTC"), the Court issued a temporary restraining order (the "TRO") against

the Defendants, which, among other things, appointed me as a temporary receiver of the

Receivership Entities. [Dkt. 14]  The TRO was extended repeatedly and eventually, pursuant to

the stipulation of the parties, was converted to the Preliminary Injunction which, among other

things, appointed me as Receiver of the Receivership Entities.  [Dkt. 47, 59, 72, 93, 100, 102,

104.]

2.      Section XX of the Preliminary Injunction states:

IT IS FURTHER ORDERED that the Receiver and all personnel hired by the
Receiver as herein authorized, including counsel to the Receiver and accountants,
are entitled to reasonable compensation for the performance of duties pursuant to
this Order and for the cost of actual out-of-pocket expenses incurred by them,
from the Assets now held by, in the possession or control of, or which may be
received by, the Receivership Entities.  The Receiver shall file with the Court and
serve on the parties periodic requests for the payment of such reasonable
compensation, with the first such request filed no more than sixty (60) days after
the date of entry of this Order.  The Receiver shall not increase the hourly rates
used as the bases for such fee applications without prior approval of the Court.

3.      This Second Application for Payment of Fees and Expenses covers the time

period from April 1, 2019 through August 31, 2019.[2]

4.      The Receiver submitted his First Application and Declaration Requesting

Approval to Pay Fees and Expenses of the Receivership on April 26, 2019 and that application

was granted by the Court. [Dkt. 101, 113.]  As a result of such application and order, the

Receiver and his agents were paid $117,695.68.

---

[2] The September 2019 fees and expenses for the Receivership's accountants, Rocky Mountain
Advisory, LLC are not included herein.  There may be other isolated fees and expenses of the
Receivership for the subject time period that are not included herein.  The Receiver reserves the
ability to include such fees and expenses in any subsequent fee application.

5.      The Preliminary Injunction, § XIV.O (and prior to that the TRO), authorizes the Receiver to establish separate bank accounts for the Receivership and provides that he "shall deposit all funds of the Receivership Entities in such designated accounts shall and make all payments and disbursements from the receivership estate from such accounts."  The Receiver established such an account at Stretto (the "Stretto Account"), and the Receiver has provided copies of the monthly Stretto Account statements to counsel for the parties, as required by the Preliminary Injunction, § XIV.O.  Copies of monthly account statements, redacted where appropriate and without copies of the checks, are attached collectively as Exhibit A.

6.      During the time period in question, the Receiver has paid various expenses of the Receivership Entities.  As examples:

    a.      Expenses associated with the operations of Elite's B2B operations, which were transitioned to a third party, Direct Pointe 7, in May 2019; [see Dkt. 127];

    b.      Ongoing software licensing fees for Elite IT Home customers (and Elite itself); and

    c.      Expenses associated with winding-up the Receivership Entities and liquidating their assets [see Dkt. 114], including the vacation of Elite's rented premises, which occurred on or about July 31, 2019;

7.      Funds from the operations of Elite IT Partners, as well as the winding up and liquidation of its assets, have been deposited (or are in the process of being deposited) into the Stretto Account.  As examples:

    a.      Payments from the B2B customers of Elite for services rendered through May 17, 2019;

b.      Proceeds from the sale of a vehicle owned by Elite [see Dkt. 120, 126];

c.      Proceeds from the sale of Elite's B2B operations [see Dkt. 127]; and

d.      Releases of Elite's funds held by various financial institutions, including funds held as charge-back reserves.

8.      The process of gathering and liquidating the assets of Elite is almost over, but, as of the date of this filing, there are still some funds that remain to be paid into the Stretto Account.

9.      As of October 3rd, 2019, the Receiver is holding funds totaling **$423,068.21** in the Stretto Account.

10.      As the Court and the parties are aware, the Receiver moved law firms in May 2019.  With respect to legal fees, therefore, this application contains billing statements from the Receiver's old firm, Prince Yeates & Geldzahler ("Prince Yeates") and his current law firm, Parsons Behle & Latimer ("Parsons Behle").[3]  The Receiver's last day at Prince Yeates was May 15, 2019.

11.      Attached as <u>Exhibit B</u> is a billing statement from Prince Yeates for the months of April, May, and June 2019.  The work performed during the applicable time period by the Receiver and other attorneys and paralegals at Prince Yeates is detailed in the billing statement. The fees for the services of the Receiver and his attorneys and paralegals at Prince Yeates, as shown in Exhibit B, total $83,812.75.

---

[3] Although the Receiver and Mr. Leeman moved from Prince Yeates to Parsons Behle, Troy Parkinson and Rick Thornton, who were also providing legal services to the Receivership, remained at Prince Yeates.  After May 15, 2019, these attorneys continued provide limited legal services to the Receivership through mid-June 2019.

27866.001\4830-5994-3590v3

12.     Attached as <u>Exhibit C</u> is a billing statement from Parsons Behle for the months of May (beginning on May 16), June, July and August 2019.  The work performed during the applicable time period by the Receiver and other attorneys at Parsons Behle is detailed in the billing statement.  The fees for the services of the Receiver and his attorneys at Parsons Behle, as shown in Exhibit C, total $58,688.00.

13.     For the span of five months, the work performed by the Receiver and others at both law firms has consisted of:

- Ongoing analysis of the operations of the Receivership Entities, including both the "Home" and "B2B" operations.  Associated communications with employees and former employees of Elite.

- Ongoing work to secure and recover Receivership assets—including receivables and amounts held on deposit with financial institutions.

- Communications with Elite's B2B consumers regarding various issues, including the status of the lawsuit, the business, the Receivership and receivables owed to Elite.

- Work with Elite IT employees to maintain B2B operations, supervise when necessary, make operational, personnel and administrative decisions, administrative actions, and be onsite when they were.

- Communications with consumers both over the telephone (Ms. Kendrick and Mr. Barton) and via email (Mr. Leeman).  Work related to the maintenance of the informational website for Elite IT customers.

- Prepare and present motions for Court approval, including to waive certain claims against witnesses [Dkt. 66], first motion for approval to pay fees and expenses of receivership [Dkt. 101], and (forthcoming) motion for approval to resolve dispute with Ray Quinney & Nebeker.

- Work related to the preparation of the Receiver's Declaration in support of FTC's motion for temporary restraining order and associated Declarations of Karen Kendrick and John Curtis. [Dkt. 80, 83, 87]

- Initial preparations for preliminary injunction hearing (including providing courtesy copies of all filings as requested by the Court) and subsequent interactions with all parties regarding resolution that obviated the hearing;

- Work associated with status conference, request to wind up businesses, and preparation for hearing [Dkt. 105, 106, 113];

- Communications with the Court and its clerks;

- Work associated with investigating, marketing, negotiating, selling and transitioning Elite's assets, including the automobile [Dkt. 118, 120] and Elite's B2B operation itself. [Dkt. 125, 127];

- Written and telephonic communications with customers and employees.

- Work to secure ongoing support for protective software installed on computers of Elite IT Home customers.

- Negotiations with and resolution of various claims involving Elite—including disputes with its landlord, certain B2B customers, Ray Quinney & Nebeker, employees, and the California Department of Labor—and associated agreements (where necessary).

- Work related to the premises leased by Elite---including communications with the landlord, cleaning out the space and associated documents, sorting and storing documents, assisting and overseeing Direct Pointe 7 in removing property from the premises.

- Work related to protecting, sorting, copying storing, accessing and analyzing Elite's data and information.

- Work to respond to chargeback requests and unemployment claims in order to secure and preserve Receivership assets and the rights of the Receivership Entities.

- Communications with attorneys for the FTC and Martinos parties regarding various issues.

- Various administrative tasks related to the Receivership and Elite—including mail review; conferences among attorneys and other personnel; providing bank account statements to other parties; providing notices of proceedings to banks, owners of Elite, and other parties; analysis of and communications involving claim against Elite's liability insurance (claim not pursued beyond denial by the carrier); Elite 401(k) issues.

- Attention to, and resolution of, case involving Elite and the Utah Division of Consumer Protection;

- Work to wind-up operations, including transitioning consumers to new data backup service, shutting down accounts, terminating various services provided to Elite, etc.

14.     The hours and billing rates for the Receiver and the attorneys and paralegals

utilized by the Receiver are as follows:

| Name | Hours | Hourly Rate |
|---|---|---|
| a.  Thomas R. Barton, Receiver (1) | 232.1 | $305.00 |
| b.  G. Troy Parkinson, attorney (2) | 138.2 | $235.00 |
| c.  Matthew Van Wagoner, attorney (3) | 93.1 | $195.00 |
| d.  Karen Kendrick, paralegal (2) | 62.4 | $135.00 |
| e.  Alex B. Leeman, attorney (1) | 48.0 | $235.00 |

6

| | | | |
|---|---|---|---|
| f. | Richard H. Thornton, attorney (2) | 2.5 | $292.50 |
| g. | Alex N. Vandiver, attorney (3) | 2.1 | $195.00 |
| h. | J. Michael Bailey, attorney (3) | 0.6 | $390.00 |

(1) = Work performed at Prince Yeates and Parsons Behle
(2) = Work performed at only Prince Yeates
(3) = Work performed at only Parsons Behle

15.     The billing rates for the Receiver, the attorneys and the paralegal working on this matter have been discounted substantially below their regular hourly rates.  The Receiver believes these rates to be reasonable based on his 25 years of experience as an attorney in this market, local industry standards, the experience and skill of the individuals in question, and the nature of the work performed.

16.     At the request of plaintiff FTC, the Receiver has agreed to discount the attorney fees by 3%.  As a result, the attorney fees requested with regard to Prince Yeates are **$81,298.37**; and the attorney fees requested with regard to Parsons Behle are **$56,927.36**.

17.     Costs and expenses incurred by the Receivership through August 31, 2019, and to be reimbursed to Prince Yeates and Parsons Behle, total **$4,617.47** ($3,232.16 to Prince Yeates and $1,385.31 to Parsons Behle).  *See* Exhibits B, p. 32, and C, p. 19, respectively.  This amount consists, generally, of costs associated with postage, photocopies, delivery expenses, and legal research fees, all of which were reasonable and necessary.  Certain expenses warrant separate explanation, as follows:

a.  "Outside Professional Services thru 7/31/19," $157.00, see Ex. B, p. 32.  These were services associated with reasonable subpoena response costs incurred by third parties and paid for by the Receivership.

  b. "Outside copy charges thru 7/31/19," $2,827.23, see Ex. B, p. 32. These are the outside charges paid by Prince Yeates to Salt Lake Legal associated with creating, copying and delivering copies of all the preliminary injunction-related filings to the Court (and to the Receiver) in anticipation of the preliminary injunction hearing set for April 29 and 30, 2019.

  c. "Moving Expenses," 6/28/2019, $360.00, see Ex. C, p. 19. These are charges paid by Matthew Van Wagoner, who was then reimbursed by Parson Behle, for a moving crew that boxed up and moved Elite IT documents from Elite IT to the storage unit rented by the Receiver.

  d. "Hard drive purchase for data copy," $118.51, 8/8/19, see Ex. C, p. 19. This is a charge for a computer hard drive that was purchased by Parsons Behle personnel that is being used by the Receiver to store certain Elite data.

  e. "Photocopies," 8/26/19, $751.50, see Ex. C, p. 19. These are photo copy charges related to B2B documents that were provided to Direct Pointe 7 as part of the transition of Elite's B2B operations to Direct Pointe 7.

18. The Receiver believes the foregoing hours and costs are all are reasonable based on his experience as an attorney, prior experience as a receiver, local industry standards, and the amount and nature of the work performed. All of the tasks performed by the Receiver and the personnel working for him were reasonably necessary in order to accomplish the goals of the Receivership as set by the Court.

19. Attached as <u>Exhibit D</u> is an application from John Curtis, of Rocky Mountain Advisory, LLC ("RMA") for April through July 2019. Mr. Curtis and RMA are the accountants

retained by the Receiver pursuant to Section XIV.F of the TRO to assist with analyzing and managing the affairs of the Receivership.  The work performed by RMA is detailed in the application and the billing statement attached thereto.

20.     The Receiver, having directed RMA's work, is familiar with the tasks performed by Mr. Curtis and RMA.  The Receiver believes the fees and expenses owed to RMA are reasonable based on his 25 years of experience as an attorney in this market, local industry standards, the experience and skill of the individuals in question, and the nature of the work performed.  Like the Receiver and his staff, Mr. Curtis and other RMA personnel are also working at discounted rates.

21.     The sum total of fees and costs requested to be paid to Rocky Mountain Advisory is **$20,754.36**.

22.     Attached as <u>Exhibit E</u> is a billing statement from Jon Robertson for the applicable time period.  Mr. Robertson was engaged pursuant to Section XIV.F of the TRO to assist with creating and updating the Receivership informational website and information pop-ups on the Elite IT Home website.  During the applicable time period, Mr. Robertson continued to update the Receivership's website and perform other related tasks involving the Receivership's website and Elite's websites.  The work performed during the applicable time period by Mr. Robertson is detailed in the billing statement.

23.     The sum total of fees requested to be paid to Mr. Robertson is **$3,465.00.**  The Receiver believes this amount is reasonable and the tasks performed by Mr. Robertson were necessary.

24.     The Receiver has personally incurred certain costs in association with the Receivership totaling **$2,129.12**.  These costs fall into two categories:

a.      $1,995.53 in payments related to maintaining Elite's suite of Google services—including its email—for the months of May through September 2019.  Given the sale of Elite's B2B operations to Direct Point 7 and the recent resolution between the FTC and Mr. Martinos, these services are being discontinued and the Receiver is taking steps to retain appropriate data from Google.  The Receiver paid these amounts from his own credit card, which, under the circumstances, was the easiest way to maintain the services and accomplish payment.  These charges are detailed in excerpts from the Receiver's monthly credit card statements attached as <u>Exhibit F</u>.

b.      $133.59 in payments to Towne Storage in Vineyard, Utah.  These payments represent costs associated with physically storing Elite's documents and certain other items, which became necessary when the Receiver vacated the premises that Elite had been renting.  The amount consists of $104.00 in monthly charges for July, August and September and $29.59 in storage materials (boxes and tape) purchased from Towne Storage.  The Receiver paid these amounts from his own credit card, which, under the circumstances, was the easiest way to accomplish payment.   These charges are also detailed in Exhibit F.

25.     In total, the Receiver seeks approval for the payment of **$169,191.68** in reasonable fees, expenses and other costs incurred by the Receiver and his agents in operating the Receivership.  If approved, the Receiver intends to pay the foregoing amounts from the funds held in the Receivership account at Stretto.

26.     The Receiver has presented a draft of this motion to the attorneys for the FTC. They have no objection to the fees and expenses requested by the Receiver.

I declare the foregoing to be true and accurate, to the best of my knowledge, information and belief, under penalty of perjury of the United States of America.  A proposed Order is submitted herewith.

RESPECTFULLY SUBMITTED this 3rd day of October 2019.

/s/ Thomas R. Barton
Thomas R. Barton, Receiver

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing SECOND APPLICATION

AND DECLARATION OF RECEIVER THOMAS R. BARTON REQUESTING APPROVAL

TO PAY FEES AND EXPENSES OF THE RECEIVERSHIP was filed with the Court's e-filing

service this 3rd day of October 2019, which sent notice to the following:


Amanda R. Grier (agrier@ftc.gov)
Colleen B. Robbins (crobbins@ftc.gov)
Elsie B. Kappler (ekappler@ftc.gov)
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-8528
Washington, DC 20580
Attorneys for the Federal Trade Commission


Eric G. Benson (ebenson@rqn.com)
Z. Ryan Pahnke (rpahnke@rqn.com)
Katherine Priest (kpriest@rqn.com)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Attorneys for James Martinos


Brett L. Tolman (brett@tolmangroup.com)
THE TOLMAN GROUP
13827 Sprague Lane, Suite 220
Draper, UT 84020
Attorneys for James Martinos


/s/   Thomas R. Barton _____

12

27866.001\4830-5994-3590v3