Thomas R. Barton (6827)
Alex B. Leeman (12578)
Matthew J. Van Wagoner (16596)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
tbarton@parsonsbehle.com
aleeman@parsonsbehle.com
ecf@parsonsbehle.com
*Receiver and attorneys for Receiver*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, Plaintiff, vs. ELITE IT PARTNERS, INC., and JAMES MICHAEL MARTINOS, Defendants. | **RECEIVER'S MOTION TO APPROVE SETTLEMENT AND MUTUAL RELEASE** Case No. 2:19-cv-00125-RJS-CMR |

Thomas R. Barton, court-appointed receiver ("Receiver") over Elite IT Partners, Inc. ("Elite IT Partners") hereby moves the Court for an order approving a settlement with the law firm Ray Quinney & Nebeker ("RQN"). In support of this Motion, the Receiver states:

1.  The Court has entered a Stipulated Preliminary Injunction Order as to Elite IT Partners and James Michael Martinos (the "Preliminary Injunction") (Dkt. No. 104).

2.  Among other things, the Preliminary Injunction allows the Receiver to make such agreements as may be necessary and advisable in discharging his duties as Receiver, and to

compromise any legal action as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities. Preliminary Injunction, § XIV, ¶¶ G, M.

3. The Court entered an Order Authorizing Receiver to Wind-Up Receivership Entities and Liquidate Receivership Assets ("Order to Wind-Up") (Dkt. No. 114), which, among other things, authorizes the Receiver to wind up the affairs of the Receivership Entities and to liquidate assets on the terms and in the manner the Receiver deems most beneficial to the Receivership, considering the value of the asset, the costs associated with liquidation, the cost and erosion of Receivership assets associated with delay, and in accordance with applicable law. Order to Wind-Up, §§ I and II.

4. It his analysis of Elite IT Partners' assets, the Receiver discovered a payment of $40,000.00 deposited with RQN and listed as an asset on the books of Elite IT Partners at the time the Temporary Restraining Order, effective February 27, 2019, was entered into by the Court.

5. RQN represented Elite IT Partners with regard to legal and lobbying services related to Utah's Telephone Fraud Prevention Act. RQN and Elite IT Partners executed an engagement letter dated November 8, 2018 and Elite IT paid RQN $40,000, characterized as an "initial retainer," on or about December 8, 2018 (the "Payment"). The Receiver does not dispute that RQN performed legal and lobbying services for Elite IT Partners during the time periods covered by the engagement letter.

6. Disputes arose between the Receiver and RQN relating to the ownership of the Payment, the legal and lobbying services rendered by RQN to Elite IT, and additional amounts that RQN claims are owed to it for legal and lobbying services rendered after November 2018.

4846-1019-3060v4

The Receiver and RQN exchanged correspondence, RQN provided declarations in support of its position, and the Receiver investigated RQN's position. Further discussions ensued.

7. The Receiver and RQN have now agreed to resolve their disputes and mutually release all claims, disputes, and controversies by and between the Receiver and RQN by entering into that certain Settlement and Mutual Release Agreement by and between the Receiver and RQN dated as of November 19, 2019 (the "Settlement Agreement"), attached hereto as <u>Exhibit A</u>. Under the Settlement Agreement, RQN will retain the Payment and release all claims for any additional funds it claims are owed by Elite IT Partners and/or the Receiver.

8. The Receiver seeks Court approval to settle and release all claims, disputes, and controversies by and between the Receiver and RQN in accordance with the Settlement Agreement.

9. The Receiver has entered into the Settlement Agreement with RQN and, if the Court approves the Settlement Agreement, the settlement transaction is set to occur one business day after such Court approval.

10. The Receiver believes the Settlement Agreement is in the best interest of the receivership estate. Approval of the Settlement Agreement will allow the Receiver to avoid costs and delay associated with litigating the claims, disputes, and controversies between RQN and the Receiver. It will also assist in the winding up of Elite IT Partners and in closing out the activities of the Receivership. The Receiver does not believe the interests of Elite IT Partner's consumer customers will be negatively impacted by the proposed Settlement Agreement.

11. The Receiver has provided a copy of this Motion to the attorneys for the other parties in this case, the FTC and Mr. Martinos, who is also a shareholder of Elite IT Partners.

4846-1019-3060v4

The FTC has indicated that it does not oppose this motion. Mr. Martinos has indicated that he does not this motion.

12. In addition, the three other unrepresented shareholders of Elite IT Partners are being served by email with notice of this Motion.

13. A proposed Order Approving Settlement and Mutual Release is submitted herewith.

WHEREFORE, the Receiver respectfully requests that the Court grant this Motion and enter the proposed Order Approving Settlement and Mutual Release.

DATED November 19, 2019.

/s/ Thomas R. Barton
Thomas R. Barton
Alex Leeman
PARSONS BEHLE & LATIMER

Receiver and attorneys for Receiver

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing RECEIVER'S MOTION TO APPROVE SETTLEMENT AND MUTUAL RELEASE was filed with the Court's e-filing service this 19th day of November 2019, which sent notice to the following:

Amanda R. Grier (agrier@ftc.gov)
Colleen B. Robbins (crobbins@ftc.gov)
Elsie B. Kappler (ekappler@ftc.gov)
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-8528
Washington, DC 20580
Attorneys for the Federal Trade Commission


Eric G. Benson (ebenson@rqn.com)
Z. Ryan Pahnke (rpahnke@rqn.com)
Katherine Priest (kpriest@rqn.com)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Attorneys for James Martinos


Brett L. Tolman (brett@tolmangroup.com)
THE TOLMAN GROUP
13827 Sprague Lane, Suite 220
Draper, UT 84020
Attorneys for James Martinos

In addition, notice was sent by email to the following unrepresented shareholders of Elite IT Partners:

Victor A. Trujillo (vtrujillo@directpointe7.com)
Wally Randolph (wrandolph@directpointe7.com)
Mike Maxwell (michaeldmaxwell@yahoo.com)

                                                          /s/ Thomas R. Barton

# Exhibit A

# SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This SETTLEMENT AND MUTUAL RELEASE AGREEMENT (this "Agreement") is entered into as of November 19, 2019 by and between ELITE IT PARTNERS, INC, a Utah corporation ("Elite IT") and RAY QUINNEY & NEBEKER P.C., a Utah professional corporation ("RQN") Elite and RQN shall hereinafter sometimes be referred to separately as "Party" or collectively as "Parties."

## RECITALS

WHEREAS, RQN represented Elite IT with regard to legal and lobbying services related to Utah's Telephone Fraud Prevention Act. A proposal from RQN to Elite IT indicated that the professional services would be delivered in two phases: a fixed fee of $40,000.00 plus approved expenses during Phase 1, which was to involve work from August to November 2018; and an additional fixed fee ranging from $60,000.00 to $80,000.00 for Phase 2, which was to involve work from December 2018 through March 2019;

WHEREAS, RQN and Elite IT subsequently executed an engagement letter dated November 8, 2018 and Elite IT paid RQN $40,000, characterized as an "initial retainer," on or about December 8, 2018 (the "Payment");

WHEREAS, RQN performed legal and lobbying services for Elite IT during the time periods covered by the engagement letter;

WHEREAS, the United States District Court for the District of Utah (the "Court") entered a Temporary Restraining Order against Elite IT effective February 27, 2019 (the "TRO") in the case, *Federal Trade Commission v. Elite IT Partners, Inc.*, et al, Civil No. 2:19-cv-125-RJS-CMR, in the United States District Court for the District of Utah (the "Lawsuit");

WHEREAS, the TRO, among other things, froze Elite IT's assets, restrained Elite IT from continuing some of its operations, and appointed a temporary receiver (the "Receiver") charged with gathering, maintaining and safeguarding Elite IT's assets pending further order of the Court;

WHEREAS, the Payment deposited with RQN was listed as an asset on Elite IT's books at the time of the TRO;

WHEREAS, disputes arose between the Receiver and RQN relating to the ownership of the Payment, the legal and lobbying services rendered by RQN to Elite IT, and additional amounts that RQN claims are owed to it for legal and lobbying services rendered after November 2019;

WHEREAS, the Court entered a Stipulated Preliminary Injunction Order (the "Stipulated Preliminary Injunction Order") on May 6, 2019, which confirmed the findings and orders of the TRO, and established the Receiver's status for the remainder of the Lawsuit. The Court has recently entered an Order Authorizing Receiver to Wind-Up Receivership Entities and Liquidate Receivership Assets against Elite IT; and

WHEREAS, the Parties have now agreed to resolve their disputes and release all claims, disputes, and controversies by and between the Parties that exist as of, or have ever existed prior to, the Effective Date all on the terms and conditions of this Agreement.

## AGREEMENTS

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and other good and valuable consideration, each Party, each for itself and for its successors and assigns, hereby agrees as follows:

1. **Payment.** The Payment deposited with RQN by Elite IT shall be in full and final satisfaction, settlement, release and discharge of all claims between the Parties, except to the extent provided by this Agreement and any additional agreements delivered in connection herewith.

2. **Effective Date.** The effective date of this Agreement will be the date upon which this Agreement is fully executed by the Parties hereto (the "Effective Date").

3. **Releases by RQN.** Upon the Effective Date of this Agreement, RQN on behalf of itself and its owners, successors, assigns, executors, administrators, predecessors, legal representatives, divisions, affiliates, related entities, associates, representatives, principals, agents, servants, employees, shareholders, officers, and directors, do hereby relieve, release, acquit, and forever discharge Elite IT, its owners, successors, assigns, executors, administrators, predecessors, legal representatives, parents, affiliates, subsidiaries, divisions, related entities, associates, representatives, principals, agents, servants, employees, attorneys, insurers, shareholders, officers, and directors, of and from any and all joint and/or several claims, charges, demands, promises, acts, agreements, costs, damages, debts, obligations, actions, causes of action (including but not limited to all avoidance actions of any type), suits in equity, expenses, executions, judgments, levies, liabilities, losses, and attorneys' fees, of whatever kind or nature, whether legal or equitable, liquidated or unliquidated, fixed or contingent, direct or indirect, suspected or unsuspected, accrued or unaccrued, known or unknown, present or future, asserted or unasserted, based upon, arising out of, appertaining to, or in connection with any legal or lobbying services (of any nature) rendered to Elite IT by RQN. This release does not apply to any legal services rendered by RQN to James M. Martinos or any other non-parties to this Agreement.

4. **Release by Elite IT.** Upon the Effective Date of this Agreement, Elite IT, on behalf of itself and its owners, successors, assigns, executors, administrators, predecessors, legal representatives, divisions, affiliates, related entities, associates, representatives, principals, agents, servants, employees, shareholders, officers, and directors, does hereby relieve, release, acquit, and forever discharge RQN, its respective owners, successors, assigns, executors, administrators, predecessors, legal representatives, parents, affiliates, subsidiaries, divisions, related entities, associates, representatives, principals, agents, servants, employees, attorneys, insurers, shareholders, officers, and directors, and also Brett Tolman individually, of and from any and all joint and/or several claims, charges, demands, promises, acts, agreements, costs, damages, debts, obligations, actions, causes of action, suits in equity, expenses, executions, judgments, levies, liabilities, losses, and attorneys' fees, of whatever kind or nature, whether legal or equitable, liquidated or unliquidated, fixed or contingent, direct or indirect, suspected or

unsuspected, accrued or unaccrued, known or unknown, present or future, asserted or unasserted, based upon, arising out of, appertaining to, or in connection with any legal or lobbying services (of any nature) rendered to Elite IT by RQN.

5. **Settlement Not an Admission.** Nothing contained in this Agreement shall be deemed an admission of any kind, whether of guilt, liability, or fact, by or against the Parties or their directors, officers, shareholders, agents, attorneys, employees, representatives, principals, successors, predecessors, assigns, and heirs. Whether or not this Agreement is consummated or approved, neither this Agreement nor evidence regarding any of the events or negotiations leading up to it shall be admissible in any action or proceeding for any purpose other than enforcement of this Agreement.

6. **Application to Successors, Predecessors, Assigns, Etc.** Except as expressly stated herein, this Agreement shall inure to the benefit of, and shall be binding upon, each of the Parties hereto and each of their successors, predecessors, assigns, respective agents, principals, servants, employees, officers, directors, members, shareholders, accountants, attorneys, trustees, representatives, parent or subsidiary companies, affiliated businesses, and all persons natural or corporate in privity, directly or indirectly, with them or any one of them.

7. **Integration.** This Agreement constitutes a single, integrated, written contract expressing the entire agreement of the Parties to this Agreement relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party to this Agreement, except as specifically set forth in this Agreement. All prior discussions, negotiations, agreements and/or contracts (whether oral or written), judgments, orders, and arbitration proceedings have been and are merged and integrated into, and are superseded by, this Agreement. This Agreement may not be supplemented or changed orally.

8. **Court Approval.** This Agreement will be disclosed to the Federal Trade Commission and other interested parties in the Lawsuit. The Agreement is subject to the Court's approval and will not be fully and finally effective until approved by the Court. In the event the Court does not approve the Agreement, it shall be null and void, and the parties shall not be obligated to enter into a different or adjusted agreement, although they may do so if they choose.

9. **Choice of Law.** THIS AGREEMENT SHALL BE GOVERNED BY, CONSTRUED, AND ENFORCED IN ACCORDANCE WITH, AND SUBJECT TO, THE LAWS OF THE STATE OF UTAH, EXCLUDING ANY LAWS THAT RESULT IN THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION. THE PARTIES FURTHER AGREE THAT THE STATE COURT LOCATED IN UTAH SHALL BE THE FORUM FOR THE RESOLUTION OF ANY DISPUTE, CLAIM, OR ALLEGATION ARISING FROM OR RELATING TO THIS AGREEMENT.

10. **Severability.** It is understood and agreed that if any one or more of the provisions contained within this Agreement shall later be found to be void, voidable, ineffective, or unenforceable, that finding shall have no effect on the remainder of the Parties' agreements, undertakings, or considerations as provided for herein and such shall remain in full force and effect

11. **Written Amendment.** No modification of the terms and provisions of this Agreement shall be made except by the execution by all Parties of a written agreement.

12. **Execution in Counterparts.** This Agreement may be executed in as many counterparts as deemed necessary and when so executed shall have the same effect as if the Parties had executed the same instrument. This Agreement shall not be effective until each of the Parties hereto has executed the original or a counterpart of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written above.

ELITE IT PARTNERS, INC.,
a Utah Corporation

By: *[signature]*
Name: Thomas R. Barton
Title: Court-Appointed Receiver


RAY QUINNEY & NEBEKER, P.C.,
a Utah Professional Corporation

By: *[signature]*
Name: Paul C. Burke
Title: General Counsel