**PARSONS BEHLE & LATIMER**
Thomas R. Barton (6827) (tbarton@parsonsbehle.com)
Alex B. Leeman (12578) (aleeman@parsonsbehle.com)
Matthew J. Van Wagoner (16596) (mvanwagoner@parsonsbehle.com)
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

*Court-Appointed Receiver and Counsel*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ELITE IT PARTNERS, INC., and JAMES MICHAEL MARTINOS,<br><br>Defendants. | **RECEIVER'S FINAL REPORT; PROPOSAL FOR DISTRIBUTION; REQUEST FOR PAYMENT OF FINAL FEES AND COSTS; AND MOTION TO TERMINATE THE RECEIVERSHIP**<br><br>Case No. 2:19-cv-00125-RJS |

In accordance with the Order Authorizing Receiver to Wind-Up Receivership Entities and Liquidate Receivership Assets ("Order to Authorizing Receiver to Wind-Up") (Dkt. No. 114) and the Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Elite IT Partners, Inc. and James Michael Martinos ("Order for Permanent Injunction") (Dkt. No. 150), Thomas R. Barton, Court-appointed receiver ("Receiver") over Elite IT Partners, Inc. ("Elite") hereby submits his Final Report; Proposal for Distribution; Request for Payment of Final Fees and Costs; and Motion to Terminate the Receivership ("Final Report and

4816-6879-0971.v8

Motion to Terminate Receivership"). Also submitted herewith is a proposed Order Approving the Receiver's Final Destruction and Terminating the Receivership.

## I.  FINAL STATUS REPORT.

Since the Order Authorizing Receiver to Wind Up, the Receiver has taken the necessary steps to wind up the operations and affairs of Elite IT Partners, Inc.—including but not limited to the following:

A.  Selling the "B2B" portion of Elite, including related assets and assumption of certain liabilities, to a third-party and thereby ceasing all regular operations of Elite;

B.  Vacating the space leased by Elite, terminating the lease, and resolving all claims with the landlord;

C.  Selling, liquidating, and/or otherwise disposing of Elite's remaining property and assets, except funds held in the Receiver's account with Stretto (the "Stretto Account");

D.  Canceling various services used by the Corporation and retaining records;

E.  Closing the Elite's bank accounts and transferring funds to the Receiver's account;

F.  Continuing to provide, and pay for, certain software services to Elite's consumer customers (without charging them) through the end of November, 2019, and assisting in the transition of such consumer customers to certain new service providers;

G.  Collecting accounts receivable and/or settling disputes and claims asserted by and against Elite;

H.  Copying, imaging and storing certain material records of Elite, and disposing of other records;

I.  Providing year-end information and tax documents to former employees of Elite;

J.  Filing corporate and other tax returns for Elite and the Receivership, and making tax and other governmental payments related to Elite;

K.  Paying other creditors of Elite;

L.  Continuing to maintain an informational website for Elite's former consumers and the general public;

M.  Eliminating and taking down any and all websites maintained by Elite and its related entities (except the Receivership website mentioned above);

N.  Continuing to respond to questions and inquiries from Elite's former consumers;

O.  Terminating Elite's benefit plans (including its 401(k) plan) and filing associated paperwork;

P.  Conducting various administrative activities and payments related to the same; and

Q.  Voluntarily dissolving Elite with the State of Utah.

As the Court is aware, the Permanent Injunction has been entered and, as far as the Receiver is aware, the individual defendant has abided by his obligations under that order. The litigation between the parties is concluded.

At this point, the Receiver is not aware of any claims against or liabilities of Elite, other than the monetary judgment (the "Judgment") in the amount of $13,537,288.75, entered in favor of the Federal Trade Commission (the "Commission") and contained in the Permanent Injunction, and refund claims that have been asserted against Elite by its former customers. Other than a limited amount of corporate records and some electronic devices needed to maintain them, Elite has no remaining assets—except funds held in the Stretto Account. Although there are still outstanding shares of Elite, those shares lack any value and the shareholders have been notified of Elite's dissolution. The Receiver has filed all tax returns for Elite and paid all governmental obligations of which he is aware. The Receivership website has provided information to Elite's consumers, customers and the general public—including events related to the winding up of Elite, its dissolution, and this Final Report and Motion to Terminate Receivership and the proposed order.

3

4816-6879-0971.v8

The Stretto Account has a current balance of $198,314.26, before payment of remaining administrative expenses, which are covered in the next section of this document. Funds in the Stretto Account are more than enough to cover these expenses, leaving a material amount to be turned over to the Commission to be applied towards the Judgment.

Over the course of the Receivership, some consumers have asked about a refund of amounts paid to Elite prior to the date of the Receivership. According to the Permanent Injunction, the Court has already determined that the Commission will handle consumer redress, other equitable relief, and/or disgorgement to the U.S. Treasury from funds paid towards the Judgment. *See* Permanent Injunction, § VII.E. The Receiver also believes that many consumer customers have obtained redress by appealing to their credit card companies. The Receiver certifies that he has provided information to the Commission which (he believes) is sufficient to allow the Commission make decisions about the redress/equitable relief process, and to administer consumer redress if the Commission concludes it is appropriate to do so.

In sum, the operations and affairs of Elite have been wound up; the entity has been dissolved; governmental obligations have been satisfied; liabilities have been paid to the extent of assets available; assets have been liquidated and marshaled into a single account; and the underlying litigation is resolved. The Receiver reports that the Receivership is ready for termination.

## II.    PROPOSAL FOR DISTRIBUTION OF REMAINING RECEIVERSHIP ASSETS.

The Receiver proposes that the remaining assets of the Receivership, which consist of approximately $200,000.00 in the Stretto Account, be distributed in the following order of priority: (1) payment of any remaining taxes or governmental obligations (of which the Receiver

believes there are none); (2) payment of administrative expenses—including the reasonable fees and costs of the Receivership; and (3) consistent with this Court's prior orders, payment of all remaining funds to the Commission towards satisfaction of the Judgment.  *See* Permanent Injunction, § X.C ("Upon approval of the Receiver's final report and request for payment . . . the Receivership will be terminated, and all funds remaining after payment of the Receiver's final approved payment must be remitted immediately to the Commission. . . .").

Given the magnitude of the Judgment amount, the Court's prior orders requiring distribution of remaining funds to the FTC, and the inability of the Receivership to satisfy any other claims, the Receiver concludes that a formal claims process is unnecessary and unwarranted.  Accordingly, the Receiver Requests that the Court exercise its discretion to approve the proposed distribution set forth herein.

### III.     FINAL REQUEST FOR PAYMENT OF FEES AND COSTS OF RECEIVERSHIP.

Pursuant to the provisions of the Order Authorizing Receiver to Wind-Up, §§ II to III, and the Order for Permanent Injunction, § X, the Receiver requests Court approval for a final payment of fees and costs from the amounts held in the Stretto Account.

Through this request, the Receiver seeks approval for a final payment of **$63,156.83**.  Of this amount, the Receiver seeks payments of:

    a.    **$34,757.41** to Parsons, Behle & Latimer ("PBL");

    b.    **$27,471.41** to Rocky Mountain Advisory, LLC ("RMA"); and

    c.    **$928.01** to the Receiver himself for reimbursement of expenses he incurred personally.

Attached hereto as Exhibit A is the Declaration of Thomas R. Barton supporting the request for payments to PBL and himself. Attached hereto as Exhibit B is the Declaration of John H. Curtis supporting the request for payment to RMA.

Accordingly, the Receiver seeks Court approval to pay the aforementioned amounts from funds in the Stretto Account before releasing the remainder to the Commission and closing the account.

IV.     **MOTION TO TERMINATE RECEIVERSHIP.**

Following payment of fees and expenses of the Receivership and distribution of remaining funds to the Commission, and in accordance with the provisions of the Order Authorizing Receiver to Wind-Up and the Permanent Injunction, the Receiver hereby requests that the Receivership be terminated. The Receiver requests that he be authorized to destroy all remaining documents, electronic records or other items related to Elite—except the hard-drives and laptop which contain information (including consumer information) that may be needed by the Commission in the future. Such hard-drives and laptop may be retained by the Receiver himself, turned over to the Commission, or securely destroyed or disposed of by the Receiver at a future date at the direction of the Commission when the Commission has determined that the information is no longer needed. The Receiver also requests that he be authorized to take down the Receivership website and/or, at the option of the Commission, have the site redirect to a site maintained by the Commission.

In addition, and consistent with the provisions of the Stipulated Preliminary Injunction Order, p. 26 (Dkt. No. 104) regarding the Receiver's liability, the Receiver requests that the Court approve and ratify the actions of the Receiver during the administration of the

6

Receivership, and that the Receiver and his retained professionals be discharged of all duties, responsibilities and obligations, and liabilities in connection with the administration of the Receivership.

A proposed Order Approving the Receiver's Final Destruction and Terminating the Receivership is submitted herewith.

DATED July 31, 2020.

/s/ Thomas R. Barton
Thomas R. Barton
Alex Leeman
Matthew J. Van Wagoner
PARSONS BEHLE & LATIMER

*Receiver and attorneys for Receiver*

4816-6879-0971.v8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing RECEIVER'S FINAL REPORT; PROPOSAL FOR DISTRIBUTION; REQUEST FOR PAYMENT OF FINAL FEES AND COSTS; AND MOTION TO TERMINATE THE RECEIVERSHIP was filed with the Court's e-filing service this 31st day of July, 2020, which sent notice to the following:

Amanda R. Grier (agrier@ftc.gov)
Colleen B. Robbins (crobbins@ftc.gov)
Elsie B. Kappler (ekappler@ftc.gov)
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-8528
Washington, DC 20580
Attorneys for the Federal Trade Commission

Brett L. Tolman (brett@tolmangroup.com)
THE TOLMAN GROUP
13827 Sprague Lane, Suite 220
Draper, UT 84020
Attorneys for James Martinos

In addition, notice was sent by email to the following unrepresented shareholders of Elite IT Partners:

Victor A. Trujillo (vtrujillo@directpointe7.com)
Wally Randolph (wrandolph@directpointe7.com)
Mike Maxwell (michaeldmaxwell@yahoo.com)

/s/ Thomas R. Barton