**Ethan W. Blevins (Utah Bar No. 16784)**
**Caleb Kruckenberg***
**John F. Kerkhoff***
Pacific Legal Foundation
555 Capitol Mall, Ste. 1290
Sacramento, CA, 95814
(916)419-7111
EBlevins@pacificlegal.org
CKruckenberg@pacificlegal.org
JKerkhoff@pacificlegal.org
Counsel for Defendants
***Pro Hac Vice** Application Forthcoming

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | CIVIL ACTION NO.: 2:19-cv-125-RJS-CMR |
| Plaintiff, | **DEFENDANTS' MOTION TO VACATE THE JUDGMENT PURSUANT TO RULE 60(B) AND MEMORANDUM IN SUPPORT** |
| v. | |
| ELITE IT PARTNERS, INC., a Utah corporation doing business as ELITE IT HOME, and JAMES MICHAEL MARTINOS, individually and as an office of ELITE PARTNERS, INC. | Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   SPECIFIC RELIEF SOUGHT AND GROUNDS FOR THE RELIEF ............................. 1

II.  SUMMARY ..................................................................................................................... 1

III. FACTS AND PROCEDURAL HISTORY ....................................................................... 2

IV. DISCUSSION ................................................................................................................. 4

  A.  The Judgment Is No Longer Equitable Because of the Intervening AMG Decision ..... 5

  B.  The AMG Decision Created Extraordinary Circumstances Warranting Vacatur Under
      Rule 60(b)(6) ................................................................................................................. 7

  C.  Rule 60(b) Allows Reopening the Judgment Even Though It Was Premised on a
      Settlement ..................................................................................................................... 13

  D.  This Motion Is Timely ................................................................................................. 14

  E.  Section 19 Is No Substitute for Section 13 .................................................................. 15

V.   CONCLUSION ............................................................................................................. 16

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Felton,*
521 U.S. 203 (1997)..................................................................................7

*AMG Cap. Mgmt. LLC v. FTC,*
141 S. Ct. 1341 (2021) ..................................................................... *passim*

*Buck v. Davis,*
137 S. Ct. 759 (2017).................................................................................8

*Bynoe v. Baca,*
966 F.3d 972 (9th Cir. 2020) ..................................................................14

*Chief Freight Lines Co. v. Loc. Union No. 886,*
514 F.2d 572 (10th Cir. 1975) .................................................................13

*Collins v. City of Wichita,*
254 F.2d 837 (10th Cir. 1958) ...................................................................8

*Cox v. Horn,*
757 F.3d 113 (3d Cir. 2014)....................................................................7, 9

*FTC v. Figgie Int'l, Inc.,*
994 F.2d 595 (9th Cir. 1993) ...................................................................15

*FTC v. Noland,*
20-cv-00047, 2021 WL 5493443 (D. Ariz. Nov. 23, 2021) .....................15

*FTC v. Zurixx, LLC,*
No. 2:19-cv-713, 2021 WL 5179139 (D. Utah Nov. 8, 2021) ..........11, 15

*Gonzalez v. Crosby,*
545 U.S. 524 (2005)...............................................................................7, 10

*Horne v. Flores,*
557 U.S. 433 (2009)....................................................................................5

*Johnson v. Spencer,*
950 F.3d 680 (10th Cir. 2020) ...............................................................7, 8, 9

*Johnson v. Spencer, et al.*,
 No. 2:17-cv-00074, ECF No. 122 (D. Utah May 13, 2020) ....................................................9

*Liljeberg v. Health Servs. Acquisition Corp.*,
 486 U.S. 847 (1988) ....................................................................................................................14

*Local No. 93, Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
 478 U.S. 501 (1986) ....................................................................................................................14

*McGraw v. Barnhart*,
 450 F.3d 493 (10th Cir. 2006) ....................................................................................................7

*Pierce v. Cook & Co., Inc.*,
 518 F.2d 720 (10th Cir. 1975) ....................................................................................................8

*Rufo v. Inmates of Suffolk Cty. Jail*,
 502 U.S. 367 (1992) ............................................................................................................*passim*

*State Bank v. Gledhill (In re Gledhill)*,
 76 F.3d 1070 (10th Cir. 1996) ..................................................................................................10

*Stokors S.A. v. Morrison*,
 147 F.3d 759 (8th Cir. 1998) ......................................................................................................6

*Twelve John Does v. D.C.*,
 841 F.2d 1133 (D.C. Cir. 1988) ..................................................................................................6

*Wilson v. Al McCord Inc.*,
 858 F.2d 1469 (10th Cir. 1988) ............................................................................................8, 10

*Zimmerman v. Quinn*,
 744 F.2d 81 (10th Cir. 1984) ........................................................................................5, 6, 10, 13

**Statutes**

15 U.S.C. § 53(b) ...............................................................................................................*passim*

15 U.S.C. § 57b ......................................................................................................................2, 12

**Other Authorities**

Fed. R. Civ. P. 60 ................................................................................................................2, 4, 13

Fed. R. Civ. P. 60(b) .....................................................................................................1, 8, 13, 14

Fed. R. Civ. P. 60(b)(5) .....................................................................................................*passim*

Fed. R. Civ. P. 60(b)(6)................................................................................................. *passim*

Press Release: *FTC Sends Checks to People Who Lost Money to a Tech Support
Scheme* (Oct. 2021),..............................................................................................4

Press Release: *Operators of Tech Support Scam Settle FTC Allegations they
Tricked Consumers into Buying Computer Repair Services* (Dec. 10, 2019) .......................13

## I.    SPECIFIC RELIEF SOUGHT AND GROUNDS FOR THE RELIEF

Defendants, Elite IT Partners, Inc., d/b/a Elite IT Home, and James Michael Martinos move to vacate this Court's final judgment against them, ECF No. 150, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The judgment imposes a financial penalty, enforced through ongoing monitoring, that the Supreme Court has held to be beyond this Court's power to order. It is thus no longer equitable for the judgment to be enforced, and, in light of the Supreme Court's new precedent, extraordinary circumstances exist to vacate the judgment. *See* Fed. R. Civ. P. 60(b)(5), (6). This Court should therefore vacate the judgment, order Plaintiff, the Federal Trade Commission, to refund all funds paid to it, plus appropriate interest, and restore this matter to the Court's active docket.

## II.    SUMMARY

This case presents a simple question: May the Federal Trade Commission enforce a monetary judgment based on a statutory provision that the United States Supreme Court unanimously held gives the FTC no such power?

To ask that question is to answer it. Yet, the defendants, Elite IT Partners, Inc. and its owner James Michael Martinos, remain subject to precisely such a multi-million-dollar judgment entered by this Court in December 2019. That judgment came after Mr. Martinos, facing massive fines and life-altering liability, settled with the FTC. But to obtain Mr. Martinos's consent (and the Court's), the FTC relied on section 13 of the FTC Act, 15 U.S.C. § 53(b), which only allows the FTC to seek a "permanent injunction."

It turns out, though, that the statute doesn't permit the FTC to seek—or a court to approve— equitable monetary relief. The Supreme Court made that clear in *AMG Cap. Mgmt. LLC v. FTC*,

141 S. Ct. 1341 (2021). Yet, the judgment remains in effect. It hovers over Mr. Martinos' head like a guillotine—ready to drop at the FTC's whim.

Federal Rule of Civil Procedure 60 was designed to avoid such inequitable results. The FTC is enforcing a judgment against the defendants when it has no authority to do so. Thus, this Court should vacate the judgment and refund money Elite IT and Mr. Martinos have already paid. This matter should then be restored to this Court's active docket.

## III.   FACTS AND PROCEDURAL HISTORY

In late February 2019, Mr. Martinos learned of this lawsuit when a receiver arrived at his company, Elite IT Partners. Unbeknownst to Mr. Martinos, the FTC had filed a complaint under seal and obtained an *ex parte* temporary restraining order and total asset freeze pursuant to Section 13(b). *See* ECF No. 14. When the receiver took over the business, it had more than $800,000 in assets, with nearly $700,000 in cash. *See* ECF No. 53-1 (receiver's report).

As Mr. Martinos later learned, the FTC claimed Elite IT engaged in unfair or deceptive acts or practices—violating Section 5 of the FTC Act—in its technical support business. The FTC sought relief under Section 13 and Section 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b. ECF No. 1, ¶ 1. The FTC sought injunctive relief, as well as "the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief." *Id*. at ¶¶ 1, 7, 72, p. 25 ¶ C (prayer for relief).

The Commission separated its Section 13 and 19 requests. It claimed that, under Section 13 of the FTC Act, it could obtain "the refund of monies paid, and the disgorgement of ill-gotten monies." *Id.* ¶ 72. Section 19, though, allowed the Court only to "grant such relief as the Court finds *necessary to redress injury to consumers* resulting from Defendants' violations of the TSR, including . . . *the refund of money*." *Id.* ¶ 73 (emphasis added). In other words, the FTC sought

disgorgement and general equitable relief under Section 13, but only the "refund of money" under Section 19.

The receiver meanwhile immediately ceased operation of most of Elite IT's business and placed the majority of its employees on leave without pay. *See* ECF No. 34 at ¶ 11. Mr. Martinos was also denied access to any of Elite IT's funds to pay for his legal defense. *See* ECF No. 70.

Elite IT and Mr. Martinos denied the allegations and raised numerous affirmative defenses. ECF No. 68. They argued that the monetary relief requested by the FTC was subject to offset based on consumer benefits, costs associated with the sale of goods and services, other business expenses, and refunds already paid. *Id.* at 8. The FTC filed a motion to strike those defenses arguing that they were "legally insufficient and will compound irrelevant issues in this case." ECF No. 95 at 6.

Given the total asset freeze, the cessation of much of Elite IT's business, and the potential for a massive monetary judgment under Section 13(b), Mr. Martinos and Elite IT agreed to settle this case. The parties requested a stay in September 2019 (ECF No. 135), before submitting a proposed settlement, which the Court approved in December 2019. ECF No. 150.

Under the Court-approved settlement, the defendants admitted no wrongdoing. The order imposed numerous conditions on both Elite IT and Mr. Martinos, and it also included a $13,537,288.75 monetary judgment against both. ECF No. 150, ¶ VI.A. The judgment was to be "paid to the Commission . . . for equitable relief, including consumer redress and any attendant expenses." *Id.*, ¶ VII.E. The remaining funds were "to be deposited to the U.S. Treasury as disgorgement." *Id.* Mr. Martinos was also required to liquidate his retirement accounts and pay all of his savings towards the outstanding judgment. *See id.*, ¶¶ VI.B–G.

Following the settlement, Elite IT's business ceased permanently. The receiver liquidated its assets and paid more than $1,000,000 towards the outstanding judgment. Mr. Martinos also liquidated his relevant accounts and paid more than $235,000 towards the judgment. These funds came from his and his wife's checking and savings accounts, his retirement account, and advances on a home equity line of credit. However, because no assets remain from the defendants' business, the judgment has never been fully satisfied, and the defendants remain subject to its terms.

From the approximately $1.2 million the FTC received from the defendants, it paid direct refunds to 31,075 former customers of Elite IT. *See* Press Release: *FTC Sends Checks to People Who Lost Money to a Tech Support Scheme* (Oct. 2021), *available at* https://www.ftc.gov/enforcement/refunds/elite-it-refunds. This appeared to be all, or nearly all of Elite IT's customers since its inception. Each of these customers received a check for $9.43, which represented, in the FTC's estimation, the actual loss each incurred from Elite IT's allegedly unlawful activity.

Meanwhile, in April 2021, the Supreme Court held that Section 13 does not allow "the Commission to seek, and a court to award, equitable monetary relief such as restitution or disgorgement." *AMG Cap.*, 141 S. Ct. at 1344. Because the defendants remain subject to the terms of the judgment—including its monetary provisions—the FTC continues to enforce penalties that the Supreme Court unanimously said it could not.

## IV.    DISCUSSION

Federal Rule of Civil Procedure 60 allows courts to "relieve a party . . . from a final judgment" on "just terms" for numerous reasons, including: when "applying" the judgment

"prospectively is no longer equitable;" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6).

### A. The Judgment Is No Longer Equitable Because of the Intervening *AMG* Decision

Under Rule 60(b)(5), a court can relieve a party from a judgment when applying it "prospectively is no longer equitable." That occurs when there is a "significant change either in factual conditions or in law" that "renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief," and once the party does so a court must modify the judgment. *Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

*Zimmerman v. Quinn*, 744 F.2d 81, 82 (10th Cir. 1984) illustrates the principle. There, a consent judgment imposed tax liability on a defendant pending conveyance of property interests. *Id.* But that took much longer than expected, so Rule 60(b)(5) offered relief. As the Court concluded: the "defendant made a sufficient showing of changed circumstances to modify the original judgment" to avoid the liability. *Id.* at 83. In other words, the consent order was no longer equitable, so it could be modified. *See id.*

Just as in *Rufo* and *Zimmerman*, here, too, equity calls for modification. The monetary relief and compliance conditions were never allowed by statute. The legal conditions have changed via *AMG*, and it would be detrimental to the public to continue enforcement of a power the FTC does not have. *See Rufo*, 502 U.S. at 390 (a change in decisional law "constitute[s] a change in circumstances that would support modification if the parties had based their agreement on a misunderstanding of the governing law."). The parties here no doubt made their agreement based

on a "misunderstanding of the governing law, which favors modification." *Id.* Indeed, if a simple misunderstanding about tax consequences of a settlement warrants intervention, then surely the unavailability of the more than $13 million award here makes continuing the judgment inequitable. *See Zimmerman*, 744 F.2d at 83

True, courts have typically applied the 60(b)(5) exception only where the judgment is "executory" or involves the "supervision of changing conduct or conditions." *Twelve John Does v. D.C.*, 841 F.2d 1133, 1138 (D.C. Cir. 1988). And "[m]ost courts have agreed that a money judgment does not have prospective application, and that relief from a final money judgment is therefore not available under the equitable leg of Rule 60(b)(5)." *Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998).

But this judgment does apply prospectively. The monetary relief was purportedly "equitable," and it comes with numerous measures designed to effectuate this "equitable" purpose. So the Rule's rationale (and text)—to protect against inequitable conditions going forward—would apply to the judgment because it includes numerous compliance provisions. *See* ECF No. 150, ¶¶ VI.J (allowing reopening if a defendant misstated its financial position); XIII (requiring that, for ten years, the defendants submit a compliance notice with Commission); XIV (requiring recordkeeping of revenues, personnel records, and additional information); XV (allowing the Commission to inspect the defendant's records for compliance with order, including "financial representations upon which part of the judgment was suspended."). These provisions clearly have prospective effect. Eliminating the suspended monetary judgment would mean the defendants need

not comply with certain parts of the judgment for fear of having to pay the rest that remains owed. The entire judgment should therefore be vacated under Rule 60(b)(5).[1]

## B.     The AMG Decision Created Extraordinary Circumstances Warranting Vacatur Under Rule 60(b)(6)

"Rule 60(b)(6) allows federal courts to relieve a party from a judgment for any reason— other than those in the five enumerated preceding categories—'that justifies relief.'" *Johnson v. Spencer*, 950 F.3d 680, 700 (10th Cir. 2020). The Rule is a "grand reservoir of equitable power to do justice in a particular case." *Id.* at 72021 (citations omitted). While "relief under Rule 60(b)(6) is extraordinary and reserved for exceptional circumstances," "the rule should be liberally construed when substantial justice will thus be served." *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006) (citations omitted).

Rule 60(b)(6) generally requires "extraordinary circumstances" warranting relief. *Gonzalez v. Crosby*, 545 U.S. 524, 537 (2005). When the Supreme Court issues a "change in the interpretation of a *substantive* statute," then this might fit the bill. *See id.* at 537 n.9; *see also Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law *by themselves* rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)[.]") (emphasis added); *Rufo*, 502 U.S. at 388 (1992) (discussing both Rule 60(b)(5) and (6) and noting that "modification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent"); *Cox v. Horn*, 757 F.3d 113, 121

---

[1] At minimum, the ongoing compliance obligations as a means of enforcing the unlawful judgment should be vacated as being inequitable. If they exist solely to enforce a financial judgment that the Court has no power to order, it is hard to see how these compliance provisions continue to be equitable. *See AMG*, 141 S. Ct. at 1344.

(3d Cir. 2014) (a "change in controlling precedent, even standing alone, might give reason for 60(b)(6) relief"). (citation omitted).

"In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed.R.Civ.P. 60(b)(6)." *Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 702 (10th Cir. 1989). Indeed, while a panel of the Tenth Circuit long ago recognized that a change in the law, *without more*, might not warrant relief under Rule 60(b)(6), *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir. 1958), the *en banc* Court subsequently granted relief in another case precisely because the controlling law had changed. *Pierce v. Cook & Co., Inc.*, 518 F.2d 720, 722–23 (10th Cir. 1975) (*en banc*). And the Tenth Circuit has since ordered relief under Rule 60(b)(6) to avoid inequitable consequences that arose from subsequent changes in the law. *See Johnson*, 950 F.3d at 702–03 (remanding for reconsideration of Rule 60(b)(6) motion based on change in Supreme Court precedent, and district court granting relief on remand); *Adams*, 888 F.2d at 702 (vacating judgment in light of intervening decision by the Supreme Court); *Wilson v. Al McCord Inc.*, 858 F.2d 1469, 1479 (10th Cir. 1988) (vacating judgment in light of change in relevant state law).

Courts thus consider "a wide range of factors" in determining whether extraordinary circumstances exist, including: (1) the "risk of injustice to the parties," and (2) the "risk of undermining the public's confidence in the judicial process." *Johnson*, 950 F.3d at 718 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988)). After all, while "finality" is important to federal courts and federal judgments, "the 'whole purpose' of Rule 60(b) 'is to make an exception to finality.'" *Buck v. Davis*, 137 S. Ct. 759, 779 (2017) (quoting *Gonzalez*, 545 U.S. at 529). As a matter of equity, then, a serious change in the law, with attendant

consequences for the parties, may well justify relief. *See Adams*, 888 F.2d at 702. In fact, "[w]hile a decision that clarifies the law will not, in and of itself, provide a basis for modifying a decree, it could constitute a change in circumstances that would support modification if the parties had based their agreement on a misunderstanding of the governing law." *Rufo*, 502 U.S. at 390. A court should therefore consider just how important the change in law is, with procedural changes providing less justification for relief but major substantive changes warranting an exception to finality. *See Cox*, 757 F.3d at 124. Further, a court should look at how much time has passed since the original judgment and consider a movant's diligence in seeking a prompt remedy, as the interests in finality are less significant when less time has passed. *See id.* at 125–26.

So, in practice, when does a change in the law justify Rule 60(b)(6) relief? Consider *Johnson*, 950 F.3d at 702–03. In that case the Tenth Circuit directed the district court to consider the possibility of relief for a litigant from two adverse judgments issued nearly 30 years earlier because they had the effect of barring a civil rights claim for his wrongful conviction. *Id.* Not only had the litigant been subsequently exonerated, but the prior judgments were inconsistent with subsequent Supreme Court decisions. *Id.* And on remand the district court vacated the judgments. *See Johnson v. Spencer, et al.*, No. 2:17-cv-00074, ECF No. 122 (D. Utah May 13, 2020). Thus, despite the significant passage of time, given both the nature of the change in law and the obviously unfair consequences to the litigant, equity demanded relief.

Likewise in *Adams* the Tenth Circuit ordered relief based on new Supreme Court precedent. 888 F.2d at 702. There a district court had denied a motion to compel arbitration of federal securities law claims, but then approximately 18 months later the Supreme Court held that such claims were arbitrable. *Id.* at 697–98. Even though the litigants had *voluntarily dismissed* an

appeal of the earlier decision, they moved for relief under Rule 60(b)(6), and the Tenth Circuit held that the complete reversal by the Supreme Court justified their request. *Id.* at 702. While the respect for finality was important, it could not overcome the inequity of defying the change in substantive law from the Supreme Court. *See id.* ("We reject [the] contentions" "that a change in law is not a substitute for appeal and does not justify relief under Fed.R.Civ.P. 60(b)(6)").

Or consider *Wilson*. There, the Tenth Circuit held that the denial of a Rule 60(b)(6) motion was an abuse of discretion because the key legal issue in a diversity case had subsequently been decided by the state supreme court. *Wilson*, 858 F.2d at 1478–79. Indeed, because the new case law was essentially outcome-determinative and the parties "did not develop the record" at trial without the benefit of that law, the Court ordered a new trial. *Id.* at 1479.[2]

The change in law by *AMG*, warrants reopening the judgment. First, the *AMG* decision is a "change in the interpretation of a *substantive* statute." *Gonzalez*, 545 U.S. at 536 n.9. Indeed, it is "a change in relevant case law by the United States Supreme Court," which, "[i]n this Circuit" "warrants relief under Fed.R.Civ.P. 60(b)(6)." *Adams*, 888 F.2d at 702. The final judgment here ordered Elite IT and Mr. Martinos to pay to the Commission $13,537,288.75 under the purported authority given the agency in Section 13(b). *See* ECF No. 150, ¶¶ VI.A, VII.E. But Section 13

---

[2] The Tenth Circuit has even held that any change in circumstances might warrant relief under Rule 60(b)(6), even if the law remains the same. *See, e.g.*, *State Bank v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1081 (10th Cir. 1996) (upholding 60(b)(6) relief and agreeing with bankruptcy court's conclusion that "the circumstances of the case had changed significantly since" the judgment); *Zimmerman*, 744 F.2d at 82–83 (upholding 60(b)(6) modification of stipulated judgment to allow the receiving party to escape tax liability for the transferred amount for a one year period when both parties had expected funds transfer to occur within sixty days and it did not occur for almost eighteen months). The rule simply requires an unexpected turn of events that makes an original judgment unjust.

does not allow "the Commission to seek, *and a court to award*, equitable monetary relief such as restitution or disgorgement." *AMG*, 141 S. Ct. at 1344 (emphasis added).

But even that fails to capture the total significance of the change in law. The *AMG* decision has changed the entire nature of this case, and others like it. Recall that the FTC obtained an *ex parte* injunction in this case "pursuant to Section 13(b)," and Elite IT spent this litigation defending itself while in receivership, with a *total* asset freeze. *See* ECF No. 15 at 1, 8–9 (Order). None of that was possible without Section 13(b), and, more significantly, none of that was possible without the availability of *money damages* through Section 13(b). As another judge in this district has since recognized, the scope of a preliminary injunction and asset freeze must be much more limited since *AMG* was decided. *See FTC v. Zurixx, LLC*, No. 2:19-cv-713, 2021 WL 5179139, at *8 (D. Utah Nov. 8, 2021) (Kimball, J.) ("Given the change from a Section 13(b) case to a Section 19 case, the court cannot find the Plaintiffs have shown that every aspect of the existing Preliminary Injunction—the asset freeze, the receivership, the clawback cases—are necessary to preserve the relief they seek under Section 19 and the state law claims. . . . Because it is unclear whether the consumer redress will be more than the funds in the receivership as well as Defendants' assets, the court concludes that potential damages provide a basis for revisiting provisions in the Preliminary Injunction.").

*AMG*, in other words, changed not only the ultimate relief the FTC can seek, but it changed the entire *process* by which the FTC can seek such relief. After all, just like the one in *Zurixx*, the FTC's "Preliminary Injunction [wa]s a rather draconian one," that "completely shut down" Mr. Martinos' business and "froze all its assets." *See id.* As in *Zurixx*, the defendants here had a "Receiver in charge of all its affairs," and the FTC "asked the Receiver to claw back as much as

11

possible for potential damages to consumers." *Id.* But without Section 13, the FTC could not have obtained these preliminary restrictions at all. And that changes the dynamics of the case. Elite IT and Mr. Martinos would not have agreed to the same settlement terms had they not been subject to the immense pressure inflicted by the injunction. *See id. AMG* thus represents a serious, substantive, change in the entire nature of FTC enforcement practice in federal court.

Second, the unfairness to Mr. Martinos and Elite IT of not vacating what is undeniably an illegal judgment is hard to overlook. Elite IT was liquidated pursuant to a $13 million judgment. Approximately $1.2 million was sent to the FTC in satisfaction of that judgment from Elite IT's accounts as well as Mr. Martinos' own retirement savings. *See* ECF No. 150, ¶ VI. There's simply nothing left. But we know now that the FTC had no right "to seek" that very award, much less for this Court to order it. *See AMG*, 141 S. Ct. at 1344.

On the other hand, what interest does the FTC have in satisfying an unlawful judgment? The agency instituted this action to punish Elite IT and Mr. Martinos for its alleged rule violations. But Congress did not authorize the agency to act in that fashion. Instead, it granted only limited authority to seek actual redress for consumer losses. *See* 15 U.S.C. § 57b (Section 19) ("nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages"). And the FTC determined that actual consumer redress, for Elite IT's lifetime, was slightly less than $300,000, and each of Elite IT's customers received that money back in a refund of $9.43. The rest of the money the FTC took simply went to the Treasury. The judgment the agency extracted here exceeds the agency's power. Surely equity requires a federal law enforcement agency to respect the limits of its own power.

Lastly, the recency of the judgment obviates any finality concerns. This Court entered final judgment on December 9, 2019. ECF No. 150. The Supreme Court eliminated the foundation for that final award on April 22, 2021, and Elite IT has filed the instant motion within a year of that decision. This case closely mirrors the timeline in *Adams*, 888 F.2d at 702, where an original judgment was undercut by a Supreme Court decision 18 months later. Just as in that case, the limited finality interests in the original judgment must give way to the injustice facing Elite IT.

### C.     Rule 60(b) Allows Reopening the Judgment Even Though It Was Premised on a Settlement

Settlement poses no bar to Rule 60 relief. The Supreme Court has recognized that both Rule 60(b)(5) and (b)(6) allow relief even from consent agreements. *See Rufo*, 502 U.S. at 382–83, 390 ("rigidity" in applying either Rule 60(b)(5) or (b)(6) to consent decree was legal error). This is because the agreement itself is tainted by a "misunderstanding of the law." *Id.* at 390. Tenth Circuit decisions are in accord. *See, e.g.*, *Adams*, 888 F.2d at 702 (vacating judgment even though movant had voluntarily dismissed original appeal); *Zimmerman*, 744 F.2d at 82–83 (upholding 60(b)(6) modification of stipulated judgment); *Chief Freight Lines Co. v. Loc. Union No. 886*, 514 F.2d 572, 576 (10th Cir. 1975) (affirming Rule 60(b)(6) relief that vacated a stipulated dismissal of action). After all, Rule 60(b) exists solely to reopen final judgments, and even settlements can be inequitable based on subsequent changes in the law. *See Rufo*, 502 U.S. at 390.

Plus, the settlement here became effective *only* with sign-off from this Court. *See* Press Release: *Operators of Tech Support Scam Settle FTC Allegations they Tricked Consumers into Buying Computer Repair Services* (Dec. 10, 2019) *available at* https://www.ftc.gov/news-events/press-releases/2019/12/operators-tech-support-scam-settle-ftc-allegations-they-tricked (noting that "The Court approved the final order" and such "[s]tipulated final orders have the force

of law *when approved and signed* by the District Court judge."). Thus, as the FTC admits, the settlement has "force of law" *only* when the Court approves it. But awarding such monetary relief is something courts cannot do—because the statute doesn't allow it. *AMG*, 141 S. Ct. at 1344. And parties cannot "agree to take action that conflicts with or violates the statute upon which the complaint was based." *Local No. 93, Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 526 (1986).

### D.      This Motion Is Timely

A motion under Rule 60(b)(5) or (6) must be brought only within a "reasonable time." Fed. R. Civ. P. 60(b); *see also Liljeberg*, 486 U.S. at 863 (discussing Rule 60(b)(6)). And a "reasonable time" is heavily dependent on the facts of an individual case. *See Rufo*, 502 U.S. at 380 (entertaining Rule 60(b)(5) motion to modify consent decree ten years after it was entered). Further, "where a change in law is the basis for the motion, the date of the challenged order provides little guidance in measuring its timeliness; valid grounds for reconsideration may arise long after a final judgment has been entered. [Instead], courts measure timeliness as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment." *Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020) (citation omitted).

Here, Mr. Martinos' motion has been brought within a year of the intervening *AMG* decision, which shows his reasonable diligence in raising this issue. Moreover, as the relevant business is completely defunct, and the FTC has already obtained more relief from Elite IT than it can lawfully obtain, it is hardly prejudicial to the agency for this Court to reopen the judgment. His motion is therefore timely under the rule.

### E. Section 19 Is No Substitute for Section 13

If the agency attempted to defend its settlement using Section 19 of the FTC Act, it would fail for three reasons. *First*, the FTC relied solely on Section 13 for disgorgement and non-redress monetary relief. *See* ECF No. 1 ¶¶ 1, 7, 72; ECF No. 95 at 9 n.2. *Second*, Section 19 permits *only* non-punitive awards that redress injury to consumers, and explicitly forbids "the imposition of any exemplary or punitive damages." 15 U.S.C. § 57b(b). The FTC calculation dated back to March 2011 and was based on gross receipts. *See* ECF No. 81-2 at 123–24 (Declaration of Roshni C. Agarwal). Such an award is punitive and fails to prove any actual injury that the award would redress. *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) (holding that Section 19 does not authorize disgorgement to Treasury); *FTC v. Noland*, 20-cv-00047, 2021 WL 5493443, at *4 (D. Ariz. Nov. 23, 2021) (Section 19 does not authorize awards of gross receipts because they would provide a "windfall" to a customer who "was satisfied with the products upon receipt and immediately consumed them," because "there is simply no 'proof of injury' in that scenario"); *Zurixx*, 2021 WL 5179139, at *3, *8 (under Section 19 the FTC has "more limited" powers, and "the FTC cannot equate the total amount of [sales] in the statutory period with consumer injury," instead it must prove specific losses to consumers). *Third*, Section 19 has a three-year statute of limitations, which was not accounted for in the judgment. 15 U.S.C. § 57b(d). Indeed, the FTC's accountant calculated a period of eight years. ECF No. 81-2 at 123–24. Without proof of actual injury by identified customers within a three-year time frame, Section 19 cannot apply.[3]

---

[3] In fact, we know that any possible refund under Section 19 is less than $300,000 and has already been paid in full. Recall that Elite IT issued $9.43 refunds to 31,075 customers, who represented nearly all of Elite IT's customers in its lifetime. An appropriate refund under Section 19 would have to be significantly less than that amount, as it could only encompass three of those years and only have been issued to *unsatisfied* customers.

## V.    CONCLUSION

Now that the Supreme Court has unequivocally held that the FTC had no power to seek, and, indeed, this Court could not approve the original settlement, it should no longer bind the defendants. Instead, this Court should return this matter to the active docket and schedule this case for trial. In so doing it should order the FTC to return all funds taken from Defendants, plus an appropriate rate of interest. Alternatively, if this Court declines to vacate the entire settlement agreement, it should, at a minimum return the unlawfully seized assets and terminate the ongoing compliance conditions.

Dated:  March 17, 2022

Respectfully submitted,

*/s/ Ethan W. Blevins*
**Ethan W. Blevins**
**(Utah Bar No. 16784)**
**Caleb Kruckenberg\***
**John F. Kerkhoff\***
Pacific Legal Foundation
555 Capitol Mall, Ste. 1290
Sacramento, CA, 95814
(916)419-7111
EBlevins@pacificlegal.org
CKruckenberg@pacificlegal.org
JKerkhoff@pacificlegal.org
Counsel for Defendants
\**Pro Hac Vice* Application
Forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2022, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

Respectfully submitted,

*/s/ Ethan W. Blevins*
**Ethan W. Blevins**
Utah Bar No. 16784