IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ELITE IT PARTNERS, INC., a Utah corporation d/b/a ELITE IT HOME and JAMES MICHAEL MARTINOS, individually and as an office of ELITE PARTNERS, INC.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO VACATE**<br><br>2:19-cv-00125-RJS<br><br>Chief District Judge Robert J. Shelby |

In early 2019, the Federal Trade Commission (FTC) brought this enforcement action against Defendants. The case was resolved through a court-approved settlement agreement later that same year. Now before the court is Defendants' Motion to Vacate the Judgment Pursuant to Rule 60(b).[1] As explained herein, the Motion is DENIED.

### BACKGROUND[2]

Beginning around 2013, Defendants—Elite IT Partners, Inc. d/b/a Elite IT Home, James Michael Martinos, and Elite Partners, Inc. (collectively Elite)—allegedly targeted older adults in a bait-and-switch operation.[3] Elite offered one-time "technical support" through online ads offering help for email issues, such as recovering forgotten passwords.[4] After receiving a

---

[1] Dkt. 169, *Motion to Vacate*.

[2] This case was settled prior to developing the factual record. For that reason, the following facts are drawn from the allegations in the Complaint. *See* Dkt. 1. And because Defendants admitted no wrongdoing in the settlement agreement, the facts are presented to reflect that posture. *See* Dkt. 150, *Final Stipulated Order*.

[3] Dkt. 9, *Plaintiff's Motion for Ex Parte Temporary Restraining Order* (*TRO*) at 2.

[4] *Id.* at 4.

customer's contact information, Elite staff would then allegedly contact the customer, deliver a fake diagnostics test, and make false statements designed to convince customers to purchase unnecessary technical support services.[5] Elite telemarketers were purportedly "trained, among other things, to (1) make false statements to consumers about the presence of viruses on consumers' computers through a three-part diagnostic test, (2) falsely tell consumers Elite provides support for Yahoo and AOL, and (3) use scare tactics to make sales."[6] The sales were for an immediate "cleaning," which allegedly removed the virus.[7] Elite would then reportedly sell cleanings and additional technical service plans without informing customers of key terms and conditions, including automatic annual renewal and a $150 early cancellation fee.[8]

## PROCEDURAL HISTORY

The Federal Trade Commission initiated this enforcement action against Elite in February 2019, filing a Complaint[9] and a Motion for a Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief (TRO) pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act (the Act).[10] On February 27, 2019, this court granted the TRO after finding "good cause to believe that Defendants [had] engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC act, 15 U.S.C. § 45(a)."[11] The court also appointed a temporary receiver and froze Elite's assets.[12]

---

[5] *Id.* at 5–7.

[6] *Id.* at 3.

[7] *Id.* at 3, 12.

[8] *Id.* at 16–18.

[9] Dkt. 1.

[10] Dkt. 9.

[11] Dkt. 15 at 2.

[12] *Id.* at 3.

2

Over opposition from Elite, the TRO was repeatedly extended for two-week periods between March 12 and April 23, 2019.[13] On May 6, 2019, the court entered a Stipulated Preliminary Injunction, which allowed Elite to continue its business-to-business technical support operations (services not subject to the FTC's Complaint) but kept the receivership and asset freeze in place.[14] Through counsel, the parties negotiated a Stipulated Order for Permanent Injunction and Monetary Judgment, which the court entered on December 9, 2019.[15]

The terms of the Stipulated Order included a monetary judgment and several compliance provisions.[16] While the monetary judgment totaled approximately $13.5 million dollars, the Order imposed a suspended judgment which worked to limit Elite's payment obligations to only those assets available and stayed certain compliance provisions.[17] Should the court find Elite made material misstatements, the suspension of judgment would be lifted.[18] The Order's compliance provisions required detailed recordkeeping of revenues, comprehensive personnel records, and allowed FTC oversight of Elite's records to ensure compliance.[19]

Two years after entering the Stipulated Order, on March 17, 2022, Elite moved to vacate it.[20] Elite argues an intervening change in law entitles it to relief under Rule 60(b) subsections (5) and (6).[21] Now that briefing is complete, the court denies the Motion for the reasons explained below.

---

[13] Dkt. 47, 59, 72, 93.
[14] Dkt. 104.
[15] Dkt. 150.
[16] *See generally id.*
[17] *Id.* at 6–8.
[18] *Id.* at 7.
[19] *Id.* at 12–15.
[20] *See generally* Motion to Vacate.
[21] *Id.* at 4–13.

## LEGAL STANDARDS

"Federal Rule of Civil Procedure 60(b) provides an exception to finality that allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances."[22] "Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances."[23] Rule 60(b) provides several grounds for relief "from a final judgment, order, or proceeding."[24] Elite argues two such grounds are applicable here: Subsection (5) which provides relief where applying the judgment "prospectively is no longer equitable"; and Subsection (6) which protects parties for "any other reason that justifies relief."[25]

When reviewing a motion for vacatur under Rule 60(b)(5), a court may modify an order or judgment "only to the extent that it has 'prospective application.'"[26] Rule 60(b)(5) is not a mechanism for challenging "the legal conclusions on which a prior judgment or order rests."[27] But if the judgment is prospective, "[t]he Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'"[28] "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court [must] modify an injunction or consent decree in light of such changes."[29]

---

[22] *Johnson v. Spencer*, 950 F.3d 680, 694 (10th Cir. 2020) (internal quotations and citations omitted) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–70 (2010)).

[23] *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990).

[24] Fed. R. Civ. P. 60(b).

[25] *See id.*; *Motion to Vacate* at 4–12.

[26] *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (quoting Fed. R. Civ. P. 60(b)(5)).

[27] *Horne v. Flores*, 557 U.S. 433, 447 (2009).

[28] *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

[29] *Id.* (internal citations and quotations omitted).

Apart from this, Rule 60(b)(6) offers "a grand reservoir of equitable power to do justice in a particular case. Although the Rule should be liberally construed when substantial justice will thus be served, relief under it is extraordinary and reserved for exceptional circumstances"[30] and "only when necessary to accomplish justice."[31] There is conflicting authority within the Tenth Circuit authority over whether a change in relevant case law warrants Rule 60(b)(6) relief.[32]

## ANALYSIS

Elite argues it is entitled to relief under either 60(b)(5) or (6) based on an intervening change in relevant law by the Supreme Court decision in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341 (2021). Accordingly, the court first summarizes *AMG Capital Management* before evaluating whether it provides a basis for relief under 60(b)(5) or (6).

**I.   *AMG Capital Management, LLC v. Federal Trade Commission***

In *AMG Capital Management,* the FTC brought an action against short-term payday lenders for "unfair or deceptive acts or practices in or affecting commerce."[33] Relying on Section 13(b) of the Act, the FTC "asked the [district] court to issue a permanent injunction to prevent [the defendant] from committing future violations of the Act" and "to order monetary

---

[30] *Johnson*, 950 F.3d at 700–01 (quoting *Kile v. United States*, 915 F.3d 682, 687 (10th Cir. 2019); *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006)).

[31] *Kile*, 915 F.3d at 688 (internal citations and quotations omitted).

[32] *Metz v. Merrill Lynch*, 39 F.3d 1482, 1491 n. 9 (10th Cir. 1994) 702 ("In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed. R. Civ. P. 60(b)(6)." (quoting *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 702 (10th Cir. 1989)). *But cf. Colo. Interstate Gas Co. v. Nat. Gas Pipeline Co. of Am.,* 962 F.2d 1528, 1531, 1535 (10th Cir.) (holding Rule 60(b)(6) relief not justified by intervening change in law by state supreme court); *Collins v. City of Wichita, Kan.,* 254 F.2d 837, 839 (10th Cir.1958) (holding a change in law on validity of a state statute, caused by intervening United States Supreme Court decision, is not grounds for Rule 60(b)(6) relief).

[33] 141 S. Ct. at 1345 (quoting 15 U.S.C. § 45(a)(1)).

5

relief, . . . restitution and disgorgement."[34] The district court granted the FTC's motion, issued an injunction, and directed the defendant to pay $1.27 billion in restitution and disgorgement.[35] The court further directed the FTC to "use these funds first to provide direct redress to consumers and then to provide other equitable relief reasonably related to [the defendant's] alleged business practices."[36] Finally, the court ordered the FTC to deposit "remaining funds in the United States Treasury as disgorgement."[37] The Ninth Circuit Court of Appeals affirmed the ruling on appeal.[38]

On certiorari, the Supreme Court reversed the lower courts' decisions.[39] The Court held Section 13(b) "authorizes the Commission to obtain, 'in proper cases,' a 'permanent injunction' in federal court against 'any person, partnership, or corporation' that it believes 'is violating, or is about to violate, any provision of law' that the Commission enforces."[40] But the "permanent injunction" provision does not authorize the FTC to seek, or a court to award, "equitable monetary relief such as restitution or disgorgement."[41] To obtain such relief, the Commission must proceed under either Section 5 or Section 19 of the Act.[42] Thus, *AMG Capital Management* clarified the type of relief the FTC may seek under Section 13(b) of the Act.

---

[34] *Id*.

[35] *Id.*

[36] *Id.* (internal quotations omitted).

[37] *Id.*

[38] *Id.*

[39] *See id.* at 1352.

[40] *Id.* at 1344 (quoting 15 U.S.C. § 53(b)).

[41] *Id.*

[42] *Id.* at 1352 (citing 15 U.S.C. § 45 (permitting the FTC to use its own administrative proceedings to obtain equitable monetary relief) and 15 U.S.C. § 57 (authorizing redress from federal courts after section 5 has been pursued and with limitations)).

In the wake of this decision, Elite moved to vacate the Stipulated Order under Rule 60(b) arguing *AMG Capital Management* "changed not only the ultimate relief the FTC can seek, but it changed the entire *process* by which the FTC can seek such relief."[43] Elite claims it faced "immense pressure inflicted by the injunction" and asset freeze issued at the outset of the proceedings, and for that reason agreed to settle.[44] According to Elite, because the injunction and asset freeze were only available due to the possibility of obtaining "*money damages* through Section 13(b)," relief "the FTC had no power to seek," the court should now vacate the entire settlement agreement under either 60(b)(5) or 60(b)(6).[45] Based on a review of *AMG Capital Management* and the high bar required to qualify for relief under Rule 60, the court concludes Elite is not entitled to relief under either section.

## II.     Elite is not Entitled to Vacatur Under Rule 60(b)(5)

First, Rule 60(b)(5) does not provide a basis to vacate the settlement. To qualify for relief under this section a judgment must not only be inequitable but also "prospective," and Elite's judgment does not qualify as prospective.[46]

Elite argues the Stipulated Order judgment qualifies for relief under 60(b)(5) because it is prospectively no longer equitable after *AMG Capital Management*. Despite being a monetary judgment, Elite claims it remains "prospective" because of the prospective compliance provisions held under suspended judgment.[47] Elite IT concedes that "[m]ost courts have agreed that a money judgment does not have prospective application, and that relief from a final money

---

[43] *Motion to Vacate* at 11.

[44] *Id.* at 12.

[45] *Motion to Vacate* at 11, 16 (emphasis added).

[46] *See* Fed. R. Civ. P. 60(b)(5) (providing relief from judgment when "applying it prospectively is no longer equitable").

[47] *Motion to Vacate* at 6–7.

judgment is therefore not available under the equitable leg of Rule 60(b)(5)."[48] But it nevertheless argues the monetary judgment here is prospective because it "was purportedly 'equitable'" and the prospective compliance provisions "effectuate this 'equitable' purpose."[49]

The FTC counters that the judgment is decidedly not prospective because monetary judgments do not meet the definition.[50] According to the FTC, for a judgment to have prospective application under Rule 60(b)(5), it must be "executory" or involve "the supervision of changing conduct or conditions."[51] The FTC argues that is not the case here, because: (1) the monetary judgments remedy a past wrong and are not executory or requiring court supervision, (2) the prospective compliance provisions do not depend on the monetary judgment and would remain valid even if there was no suspended judgment, and (3) the monetary payments have been satisfied under the suspended judgment and would only have prospective relevance if Defendant Martinos lied in his sworn financial statements.[52]

The FTC is correct. The Tenth Circuit has held that monetary judgments are generally not considered prospective within the meaning of Rule 60(b)(5).[53] Elite's attempt to recharacterize the nature of the monetary judgment through the compliance provisions and the suspended judgment is unavailing. As one court observed, "[v]irtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect,

---

[48] *Motion to Vacate* at 6 (quoting *Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998)).

[49] *Id.*

[50] Dkt. 174 at 10–12.

[51] *Id.* at 11 (quoting *U.S. v. Melot*, 712 F. App'x 719, 721 (10th Cir. 2017) (internal citation and quotation omitted)).

[52] *Id.* at 11–12.

[53] *See Melot,* 712 F. App'x at 721 ("A money judgment . . . simply remedies a past wrong; [i]t isn't executory and doesn't require the court to supervise any future changing conditions."); *see also FTC v. Apex Capital Grp.*, CV 18-9573-JFW(JPRx), 2021 WL 7707269, *3 (C.D. Cal. Sept. 3, 2021) ("Even if the judgment debtor has not yet paid the judgment . . . it is not 'prospective,' since it is not executory and involves no judicial supervision of changing conduct or conditions." (quoting 12 James Wm. Moore et al., *Moore*'s *Federal Practice – Civil* § 60.47 [1][b] (2021)).

even a money judgment . . . . That a court's action has continuing consequences, however, does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)."[54]

Elite challenges this conclusion by pointing to *Zimmerman v. Quinn*, a case where the Tenth Circuit Court of Appeals held a monetary judgment qualified as prospective within the meaning of Rule 60(b)(5).[55] In *Zimmerman*, an eighteen-month delay in transferring interests under a judgment imposed unanticipated tax liability once the transfer occurred.[56] The court concluded, "this is the type of changed circumstance contemplated by the equitable relief provision in Rule 60(b)(5)."[57] Elite argues its circumstances mirror *Zimmerman* because after *AMG Capital Management* the Stipulated Order is "no longer equitable"—"the monetary relief and compliance conditions were never allowed by statute"—thus, the Order should be modified.[58]

But "the Rule 60(b)(5) language . . . doesn't allow a court to provide relief from any judgment, even assuming it's inequitable; it only allows for relief from judgments that have prospective application or effect."[59] The first inquiry then is not whether the judgment is still equitable—which is the inquiry Elite asks the court to consider in applying *Zimmerman*—but rather whether it is prospective.[60] To that question, Elite merely declares the judgment is

---

[54] *Twelve John Does*, 841 F.2d at 1138.

[55] 744 F.2d 81 (10th Cir. 1984); *see* Dkt. 169 at 5.

[56] *Zimmerman*, 744 F.2d at 82.

[57] *Id.* at 82.

[58] *Motion to Vacate* at 5 (citing *Zimmerman*, 744 F.2d at 83).

[59] *U.S. v. Melot*, 712 F. App'x at 720–21.

[60] *See* Fed. R. Civ. P. 60(b)(5) (providing relief when "applying a judgment *prospectively is no longer equitable*" (emphasis added)).

prospective and enumerates the components of the judgment it believes are prospective, without citing any binding or persuasive authorities to support its position.[61]

This case differs from *Zimmerman* in that the changed circumstance—an intervening change in law—does not create a new prospective monetary cost. Rather, Elite's argument is that the changed circumstances prospectively make the monetary judgment inequitable. But, this does not change the monetary judgment to impose a new prospective element, as was the case in *Zimmerman*. And no authority presented defines Elite's judgment in such a way that it qualifies as prospective under Rule 60(b)(5), even assuming the judgment is now inequitable under *AMG Capital Management*. On the contrary, the great weight of persuasive authority establishes that equitable monetary judgments awarded to the FTC are not prospective and thus Rule 60(b)(5) relief is unavailable.[62]

The court is particularly persuaded by *FTC v. Ivy Capital*, a recent decision in which a federal court in Nevada faced the same question presented here: whether a previously granted judgment awarding the FTC restitution and disgorgement could be vacated under Rule 60(b)(5) in light of the intervening *AMG Capital Management* decision.[63] The *Ivy Capital* court denied vacatur because Rule 60(b)(5) only applies to prospective injunctive relief, and the prior judgment imposed equitable monetary relief which is properly characterized as "a present remedy for a past wrong" rather than prospective relief.[64] The court is further persuaded by *FTC*

---

[61] *Motion to Vacate* at 6–7.

[62] *See FTC v. Ivy Cap., Inc.*, 340 F.R.D. 602, 607 (D. Nev. 2022) ("The equity referenced in Rule 60(b)(5) applies to prospective relief, not the equitable monetary relief that movants challenge here."); *FTC v. Nat'l Urological Grp., Inc.*, No. 1:04-CV-3294-CAP, 2021 WL 5774177, at *3 (N.D. Ga. Sept. 30, 2021); *FTC v. AH Media Group, LLC.*, 339 F.R.D. 612 (N.D. Cal. 2021).

[63] *Ivy Cap.*, 340 F.R.D. at 607.

[64] *Id.* (quoting *Cal. By & Through Becerra v EPA*, 978 F.3d 708, 713–17 (9th Cir. 2020)).

*v. National Urological Group*, *Inc*., which reached a similar conclusion.[65] The court there held, "Rule 60(b)(5) does not apply here because the [monetary] Contempt Judgment is retroactive rather than prospective as it awards monetary damages for past wrongdoing."[66]

The court concludes the Stipulated Order judgment is not prospective. The monetary judgment provides redress for past harms. Even assuming the judgment is inequitable due to *AMG Capital Management,* this does not change the character of the judgment to render it prospective. Thus, Elite is not entitled to vacatur under Rule 60(b)(5).

### III.     Elite is not Entitled to Vacatur Under Rule 60(b)(6)

As noted, Rule 60(b)(6) provides relief from judgment "only in extraordinary circumstances and only when necessary to accomplish justice."[67] Elite argues the *AMG Capital Management* decision "warrant[s] vacatur under Rule 60(b)(6)."[68] The first question presented is whether the Tenth Circuit categorically recognizes an intervening change in law as extraordinary circumstances.[69] Because Tenth Circuit law is unclear on this point, the court then evaluates whether the *AMG Capital Management* decision alone qualifies as extraordinary circumstances.

    **a.   In The Tenth Circuit, a Change in Law by the Supreme Court does not Automatically Warrant Relief Under Rule 60(b)(6)**

---

[65] 2021 WL 5774177 at *2–3.

[66] *FTC v. Nat'l Urological Grp., Inc.*, 2021 WL 5774177, at *3 (N.D. Ga. Sept. 30, 2021) ("Rule 60(b)(5) does not apply here because the $ 40 million 2017 Contempt Judgment is retroactive rather than prospective as it awards monetary damages for past wrongdoing.").

[67] *Cashner*, 98 F.3d 572, 579.

[68] *Motion to Vacate* at 7.

[69] As a district court sitting in the Tenth Circuit Court of Appeals, I "must follow the precedent of this circuit, regardless of [any] advantages of the precedent of our sister circuits." United States v. Spedalieri, 910 F.2d 707, 709 n.2 (10th Cir. 1990).

The court first looks to whether a change in law qualifies as extraordinary circumstances. Elite responds with a resounding yes and directs the court's attention to a footnote in a 1994 Tenth Circuit case, *Metz v. Merrill Lynch, Pierce, Fenner & Smith*, that purportedly clears up any possible intracircuit split.[70]  The footnote begins, "In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed. R. Civ. P. 60(b)(6)."[71]  The FTC disagrees with this interpretation, arguing the Tenth Circuit does not grant 60(b)(6) relief after a change in law by the Supreme Court, and instead argues the same footnote merely acknowledges the Circuit's conflicting caselaw on this point.[72]

The court agrees with the FTC that *Metz* does not resolve the conflicting precedent within the Circuit.  While the footnote begins as quoted, the language merely provides context:

> "In this circuit, a change in relevant case law by the United States Supreme Court warrants relief under Fed. R. Civ. P. 60(b)(6)." *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d at 702 (citing *Pierce v. Cook & Co.,* 518 F.2d 720, 722–24 (10th Cir. 1975)[)]; *but cf. Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America,* 962 F.2d 1528, 1531, 1535 (10th Cir. 1992) (Rule 60(b) relief not justified by intervening decision of state supreme court); *Collins v. City of Wichita, Kansas,* 254 F.2d 837, 839 (10th Cir.1958) (change in law on validity of state statute, caused by intervening United States Supreme Court decision, not grounds for Rule 60(b) relief). Here, the dispositive basis for upholding the denial of Rule 60(b)(6) relief is the waiver by Merrill Lynch of the right to compel arbitration, as explained earlier in the text.[73]

The court reads this footnote as a recognition of the conflicting Circuit precedents: in *Adams* and *Pierce*, the Tenth Circuit held changes in relevant case law by the Supreme Court warranted

---

[70] Dkt. 186 at 15 (citing *Metz*, 39 F.3d at 1491 n. 9).

[71] *Metz*, 39 F.3d at 1491 (quoting *Adams*, 888 F.2d at 702).

[72] Dkt. 174 at 26 ("In *Metz*, the Tenth Circuit acknowledged the holding in *Adam*, nothing that it cited *Pierce v. Cooke & Co.*, and compared those cases with Tenth Circuit authority holding the opposite.").

[73] *Metz*, 39 F.3d at 1491 n. 9.

relief under Rule 60(b)(6), but in *Colorado Interstate Gas* and *Collins*, the Tenth Circuit held that it did not.[74]

The final sentence in the footnote leads the court to disagree with Elite that this clarifies the law. The dispositive issue before the Tenth Circuit in *Metz* was the defendant's waiver of the right to compel arbitration.[75] Thus, the court refrained from deciding the split within the Circuit concerning whether an intervening Supreme Court decision warrants relief under Rule 60(b)(6).[76]

This conclusion is further supported by the fact that the language appears in a footnote. If the Circuit intended to clarify nearly 50 years of conflicting precedent, it likely would not do so in a footnote that merely invites a comparison between cases—particularly where the issue is non-dispositive. As such, the court finds that within the Tenth Circuit, a change in relevant case law may or may not justify relief under Rule 60(b)(6), and thus continues the inquiry.

    b. *AMG Capital Management* **Does Not, On Its Own, Qualify as Extraordinary Circumstances Under Rule 60(b)(6)**

Elite also argues the "*AMG* decision created extraordinary circumstances warranting vacatur under Rule 60(b)(6)" here.[77] Specifically, Elite argues "a serious change in law, with attendant consequences for the parties" qualifies as extraordinary circumstances and upholding the Stipulated Order risks sanctioning injustice.[78] According to Elite, the *AMG Capital Management* decision rendered the FTC's preliminary restrictions imposed under Section 13 (the injunction, asset freeze, and receivership) unlawful, and these unlawful actions became the basis

---

[74] *See id.*

[75] *See id.* at 1490–91.

[76] *See id.* at 1490–91 & n.9.

[77] *Motion to Vacate* at 12.

[78] *Id.* at 8–9.

of the Order.[79] Elite argues the court's interest in finality is outweighed by interests of justice because *AMG Capital Management* "changed the entire nature of this case, and others like it," and "the unfairness to [Elite] of not vacating what is undeniably an illegal judgment is hard to overlook."[80] Finally, Elite argues the FTC cannot alternatively invoke its authority under Section 19 as a means to get the same judgment for two reasons: (1) "Section 19 permits only non-punitive awards that redress injury to consumers, and explicitly forbids 'the imposition of any exemplary or punitive damages," which the court ordered in the case at hand;[81] and (2) "Section 19 requires redress[,] . . . refunds should be given only 'to those buyers who make a valid claim for such redress,'" and the judgment here provided for extra money to be deposited to the U.S. Treasury as disgorgement.[82]

The FTC disagrees, persuasively arguing the case fails to qualify for Rule 60(b)(6) relief.[83] As an initial matter, the FTC argues Elite's deliberate choice to settle renders Rule 60(b)(6) inapplicable because the Rule "is not for the purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests."[84] But even applying Rule 60(b)(6), the FTC argues the relevant factors indicate no extraordinary circumstances exist: (1) the FTC's actions were lawful, as it was well-settled precedent at the time the FTC filed this case that Section 13(b) allowed

---

[79] *Id.* at 11–12 ("[W]ithout Section 13, the FTC could not have obtained these preliminary restrictions at all. And that changes the dynamics of the case. Elite IT and Mr. Martinos would not have agreed to the same settlement terms had they not been subject to the immense pressure inflicted by the injunction.").

[80] *Id.* at 10–12.

[81] Dkt. 186 at 12 (quoting 15 U.S.C. § 57b(b)).

[82] *Id.* at 12–13 (quoting *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993)).

[83] Dkt. 174 at 15.

[84] *Id.* at 16 (quoting *Cashner*, 98 F.3d at 580); *see also Johnson*, 950 F.3d at 703 ("The sort of 'free, calculated, and deliberate choices' that may undermine a party's request for Rule 60(b)(6) are things like settlement agreements that have not worked out for the party[.]" (internal citations omitted)).

14

monetary relief and the attendant equitable relief; (2) even with *AMG Capital Management,* the FTC still has the ability to obtain injunctive relief under Section 13(b) and can obtain redress and equitable relief under Section 19 of the Act; and, (3) there was no injustice done to Elite—it made a conscious decision to forgo a hearing, stipulate to a final order, and waive its appeal rights.[85]  The court agrees with the FTC.

To start, Tenth Circuit precedent looks unfavorably on granting Rule 60(b)(6) relief for stipulated agreements, stating "Rule 60(b)(6) cannot be used to set aside a free, counseled, deliberate choice whose consequences in hindsight are unfortunate."[86]  And the Circuit specifically called out settlement agreements as the exact "sort of free, calculated, and deliberate choices that may undermine a party's request for Rule 60(b)(6) relief."[87]  Indeed, "even if the settlement upon which the parties agreed constituted a bad deal in hindsight, there is nothing sufficiently unusual or compelling about making a bad bargain to warrant relief under Rule 60(b)(6)."[88]  "Stipulated judgments negotiated in open courts are not to be easily set aside."[89]  It is true that on occasion, even under a settlement agreement, an unanticipated intervening event may constitute extraordinary circumstances, rendering the judgment inequitable and warranting relief under 60(b)(6).[90]  But above all, in evaluating whether to grant relief for extraordinary circumstances, the court must consider a wide range of factors such as "the risk of injustice to the

---

[85] *Id.* at 19–20.

[86] *Kile*, 915 F.3d at 688 (internal citations and quotations omitted).

[87] *Johnson*, 950 F.3d at 703 (internal quotations omitted).

[88] *Kile*, 915 F.3d at 688 (internal citations and quotations omitted).

[89] *Cashner*, 98 F.3d at 580 (internal citations and quotations omitted).

[90] *See id.* at 579; *Zimmerman*, 744 F.2d at 82–83 (affirming modification of a settlement agreement under 60(b)(6) because intervening events altered the judgment amounts).

parties," "the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process."[91]

Given the strong instruction to protect settlements and the high bar established for showing extraordinary circumstances, the court concludes Elite is not entitled to relief under Rule 60(b)(6). Elite freely entered into the Stipulated Order with the benefit of experienced counsel. While Elite claims it entered into the settlement because of "the immense pressure inflicted by the injunction," Elite does not claim it was compelled to settle, having no other options, and without the benefit of counsel.[92] This alone weighs in favor of denying relief.[93] More importantly, Elite has not shown a risk of injustice. When the FTC sought the injunction and equitable relief against Elite through Section 13(b), it was considered lawful. *AMG Capital Management* does not now make it unlawful, as the retroactive effect of the Supreme Court's interpretation applies only to cases still open on direct review.[94] Admittedly, the FTC can no longer seek some of the same monetary relief previously available under Section 13(b).[95] Even still, its authority under Section 19 provides similar remedies.[96] The intervening clarification in law does little to change the circumstances surrounding the settlement. Specifically, the pressure inflicted by the injunction and availability of money damages which Elite claims led to the

---

[91] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

[92] *Motion to Vacate* at 12.

[93] *See Johnson*, 950 F.3d at 703 ("The sort of free, calculated, and deliberate choices that may undermine a party's request for Rule 60(b)(6) relief are things like settlement agreements that have not worked out for the party, or the party's regretted decision . . . ." (internal citations and quotations omitted)).

[94] *See Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 97 (1993) ("When This Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review . . . ."); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed.").

[95] *AMG Cap. Mgmt.*, 141 S. Ct. at 1347.

[96] *Id.* at 1349 (explaining that Section 13 authorizes injunctive but not monetary relief, but the FTC may obtain monetary relief through Section 19, although with some limitations).

settlement, are still remedies available to the FTC, even if the mechanisms and means to obtaining them now differ. Thus, there is no injustice to holding Elite responsible for the judgment it agreed to. On the limited record before the court, it appears more likely that releasing Elite from its knowing and voluntary settlement would actually increase the risk of undermining the public's confidence in the judicial system. In sum, there are no extraordinary circumstances necessitating 60(b)(6) relief to accomplish justice.

## CONCLUSION

For the reasons stated, Defendants' Motion to Vacate the Judgment Pursuant to Rule 60(b)[97] is DENIED.

SO ORDERED this 17th day of January, 2023.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[97] Dkt. 169.