IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ELITE IT PARTNERS, INC., a Utah corporation d/b/a ELITE IT HOME and JAMES MICHAEL MARTINOS, individually and as an office of ELITE PARTNERS, INC.,<br><br>　　　　Defendants. | **AMENDED MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO VACATE**[1]<br><br>2:19-cv-00125-RJS<br><br>Chief District Judge Robert J. Shelby |

In early 2019, the Federal Trade Commission (FTC) brought this enforcement action against Defendants. The case was resolved through a court-approved settlement agreement later that year. Now before the court is Defendants' Motion to Vacate the Judgment Pursuant to Rule 60(b).[2] As explained herein, the Motion is DENIED.

## BACKGROUND[3]

Beginning around 2013, Defendants—Elite IT Partners, Inc. d/b/a Elite IT Home, James Michael Martinos, and Elite Partners, Inc. (collectively Elite)—allegedly targeted older adults in a bait-and-switch operation.[4] Elite offered one-time "technical support" through online ads

---

[1] This amended decision corrects an error in the court's original opinion concerning Tenth Circuit precedent when a party seeks relief from judgment after a subsequent change in law.

[2] Dkt. 169, *Motion to Vacate*.

[3] The facts are pulled from the allegations in the Complaint but the court notes Defendants admitted no wrongdoing in the settlement agreement. *See* Dkt. 150, *Final Stipulated Order*.

[4] Dkt. 9, *Plaintiff's Motion for Ex Parte Temporary Restraining Order* (*TRO*) at 2.

offering help for email issues, such as recovering forgotten passwords.[5] After receiving a customer's contact information, Elite staff would then allegedly contact the customer, deliver a fake diagnostics test, and make false statements designed to convince customers to purchase unnecessary technical support services.[6] Elite telemarketers were purportedly "trained, among other things, to (1) make false statements to consumers about the presence of viruses on consumers' computers through a three-part diagnostic test, (2) falsely tell consumers Elite provides support for Yahoo and AOL, and (3) use scare tactics to make sales."[7] The sales were for an immediate "cleaning," which allegedly removed the virus.[8] Elite would then reportedly sell cleanings and additional technical service plans without informing customers of key terms and conditions, including automatic annual renewal and a $150 early cancellation fee.[9]

## PROCEDURAL HISTORY

The Federal Trade Commission initiated this enforcement action against Elite in February 2019, filing a Complaint[10] and a Motion for a Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief (TRO) pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act (the Act).[11] On February 27, 2019, this court entered the TRO after finding "good cause to believe that Defendants [had] engaged in and are

---

[5] *Id.* at 4.

[6] *Id.* at 5–7.

[7] *Id.* at 3.

[8] *Id.* at 3, 12.

[9] *Id.* at 16–18.

[10] Dkt. 1.

[11] Dkt. 9.

likely to engage in acts or practices that violate Section 5(a) of the FTC act, 15 U.S.C. § 45(a)."[12] The court also appointed a temporary receiver and froze Elite's assets.[13]

Over opposition from Elite, the TRO was repeatedly extended for two-week periods between March 12 and April 23, 2019.[14] On May 6, 2019, the court entered a Stipulated Preliminary Injunction, which allowed Elite to continue its business-to-business technical support operations (services not subject to the FTC's Complaint) but kept the receivership and asset freeze in place.[15] Through counsel, the parties negotiated a Stipulated Order for Permanent Injunction and Monetary Judgment, which the court entered on December 9, 2019.[16]

The terms of the Stipulated Order included a monetary judgment and several compliance provisions.[17] While the monetary judgment totaled approximately $13.5 million dollars, the Order imposed a suspended judgment which worked to limit Elite's payment obligations to only those assets available and stayed certain compliance provisions.[18] Should the court find Elite made material misstatements, the suspension of judgment would be lifted.[19] The Order's compliance provisions required detailed recordkeeping of revenues, comprehensive personnel records, and allowed FTC oversight of Elite's records to ensure compliance.[20]

---

[12] Dkt. 15 at 2.

[13] *Id.* at 3.

[14] Dkt. 47, 59, 72, 93.

[15] Dkt. 104.

[16] Dkt. 150.

[17] *See generally id.*

[18] *Id.* at 6–8.

[19] *Id.* at 7.

[20] *Id.* at 12–15.

Two years after entering the Stipulated Order, on March 17, 2022, Elite moved to vacate it.[21] Elite argues an intervening change in law entitles it to relief under Rule 60(b) subsections (5) and (6).[22] Now that briefing is complete, the court denies the Motion for the reasons explained below.

## LEGAL STANDARDS

"Federal Rule of Civil Procedure 60(b) provides an exception to finality that allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances."[23] "Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances."[24] Rule 60(b) provides several grounds for relief "from a final judgment, order, or proceeding."[25] Elite argues two such grounds are applicable here: Subsection (5) which provides relief where applying the judgment "prospectively is no longer equitable"; and Subsection (6) which protects parties for "any other reason that justifies relief."[26]

When reviewing a motion for vacatur under Rule 60(b)(5), a court may modify an order or judgment "only to the extent that it has 'prospective application.'"[27] Rule 60(b)(5) is not a mechanism for challenging "the legal conclusions on which a prior judgment or order rests."[28] But if the judgment is prospective, "[t]he Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in

---

[21] *See generally Motion to Vacate*.

[22] *Id.* at 4–13.

[23] *Johnson v. Spencer*, 950 F.3d 680, 694 (10th Cir. 2020) (internal quotations and citations omitted) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–70 (2010)).

[24] *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990).

[25] Fed. R. Civ. P. 60(b).

[26] *See id.*; *Motion to Vacate* at 4–12.

[27] *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (quoting Fed. R. Civ. P. 60(b)(5)).

[28] *Horne v. Flores*, 557 U.S. 433, 447 (2009).

4

law' renders continued enforcement 'detrimental to the public interest.'"[29] "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court [must] modify an injunction or consent decree in light of such changes."[30]

Apart from this, Rule 60(b)(6) offers "a grand reservoir of equitable power to do justice in a particular case. Although the Rule should be liberally construed when substantial justice will thus be served, relief under it is extraordinary and reserved for exceptional circumstances"[31] and "only when necessary to accomplish justice."[32]

## ANALYSIS

Elite argues it is entitled to relief under either 60(b)(5) or (6) based on an intervening change in relevant law by the Supreme Court decision in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341 (2021). Accordingly, the court first summarizes *AMG Capital Management* before evaluating whether it provides a basis for relief under 60(b)(5) or (6).

### I. *AMG Capital Management, LLC v. Federal Trade Commission*

In *AMG Capital Management,* the FTC brought an action against short-term payday lenders for "unfair or deceptive acts or practices in or affecting commerce."[33] Relying on Section 13(b) of the Act, the FTC "asked the [district] court to issue a permanent injunction to prevent [the defendant] from committing future violations of the Act" and "to order monetary

---

[29] *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

[30] *Id.* (internal citations and quotations omitted).

[31] *Johnson*, 950 F.3d at 700–01 (quoting *Kile v. United States*, 915 F.3d 682, 687 (10th Cir. 2019); *McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006)).

[32] *Kile*, 915 F.3d at 688 (internal citations and quotations omitted).

[33] 141 S. Ct. at 1345 (quoting 15 U.S.C. § 45(a)(1)).

relief, . . . restitution and disgorgement."[34] The district court granted the FTC's motion, issued an injunction, and directed the defendant to pay $1.27 billion in restitution and disgorgement.[35] The court further directed the FTC to "use these funds first to provide direct redress to consumers and then to provide other equitable relief reasonably related to [the defendant's] alleged business practices."[36] Finally, the court ordered the FTC to deposit "remaining funds in the United States Treasury as disgorgement."[37] The Ninth Circuit Court of Appeals affirmed the ruling on appeal.[38]

On certiorari, the Supreme Court reversed the lower courts' decisions.[39] The Court held Section 13(b) "authorizes the Commission to obtain, 'in proper cases,' a 'permanent injunction' in federal court against 'any person, partnership, or corporation' that it believes 'is violating, or is about to violate, any provision of law' that the Commission enforces."[40] But the "permanent injunction" provision does not authorize the FTC to seek, or a court to award, "equitable monetary relief such as restitution or disgorgement."[41] To obtain such relief, the Commission must proceed under either Section 5 or Section 19 of the Act.[42] Thus, *AMG Capital Management* clarified the type of relief the FTC may seek under Section 13(b) of the Act.

---

[34] *Id*.

[35] *Id.*

[36] *Id.* (internal quotations omitted).

[37] *Id.*

[38] *Id.*

[39] *See id.* at 1352.

[40] *Id.* at 1344 (quoting 15 U.S.C. § 53(b)).

[41] *Id.*

[42] *Id.* at 1352 (citing 15 U.S.C. § 45 (permitting the FTC to use its own administrative proceedings to obtain equitable monetary relief) and 15 U.S.C. § 57 (authorizing redress from federal courts after section 5 has been pursued and with limitations)).

In the wake of this decision, Elite moved to vacate the Stipulated Order under Rule 60(b), arguing *AMG Capital Management* "changed not only the ultimate relief the FTC can seek, but it changed the entire *process* by which the FTC can seek such relief."[43] Elite claims it faced "immense pressure inflicted by the injunction" and asset freeze issued at the outset of the proceedings, and for that reason agreed to settle.[44] According to Elite, because the injunction and asset freeze were only available due to the possibility of obtaining "*money damages* through Section 13(b)," relief "the FTC had no power to seek," the court should now vacate the entire settlement agreement under either 60(b)(5) or 60(b)(6).[45] Based on a review of *AMG Capital Management* and the high bar required to qualify for relief under Rule 60, the court concludes Elite is not entitled to relief under either section.

## II.     Elite is not Entitled to Vacatur Under Rule 60(b)(5)

First, Rule 60(b)(5) does not provide a basis to vacate the settlement. To qualify for relief under this section, a judgment must not only be inequitable but also "prospective," and Elite's judgment does not qualify as prospective.[46]

Elite argues the Stipulated Order judgment qualifies for relief under 60(b)(5) because it is prospectively no longer equitable after *AMG Capital Management*. Despite being a monetary judgment, Elite claims it remains "prospective" because of the prospective compliance provisions held under suspended judgment.[47] Elite IT concedes that "[m]ost courts have agreed that a money judgment does not have prospective application, and that relief from a final money

---

[43] *Motion to Vacate* at 11.

[44] *Id.* at 12.

[45] *Motion to Vacate* at 11, 16 (emphasis added).

[46] *See* Fed. R. Civ. P. 60(b)(5) (providing relief from judgment when "applying it prospectively is no longer equitable").

[47] *Motion to Vacate* at 6–7.

judgment is therefore not available under the equitable leg of Rule 60(b)(5)."[48] But it nevertheless argues the monetary judgment here is prospective because it "was purportedly 'equitable'" and the prospective compliance provisions "effectuate this 'equitable' purpose."[49]

The FTC counters that the judgment is decidedly not prospective because monetary judgments do not meet the definition.[50] According to the FTC, for a judgment to have prospective application under Rule 60(b)(5), it must be "executory" or involve "the supervision of changing conduct or conditions."[51] The FTC argues that is not the case here, because: (1) the monetary judgments remedy a past wrong and are not executory or requiring court supervision, (2) the prospective compliance provisions do not depend on the monetary judgment and would remain valid even if there was no suspended judgment, and (3) the monetary payments have been satisfied under the suspended judgment and would only have prospective relevance if Defendant Martinos lied in his sworn financial statements.[52]

The FTC is correct. The Tenth Circuit has held that monetary judgments are generally not considered prospective within the meaning of Rule 60(b)(5).[53] Elite's attempt to recharacterize the nature of the monetary judgment through the compliance provisions and the suspended judgment is unavailing. As one court observed, "[v]irtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect,

---

[48] *Motion to Vacate* at 6 (quoting *Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998)).

[49] *Id.*

[50] Dkt. 174, *FTC's Response* at 10–12.

[51] *Id.* at 11 (quoting *U.S. v. Melot*, 712 F. App'x 719, 721 (10th Cir. 2017) (internal citation and quotation omitted)).

[52] *Id.* at 11–12.

[53] *See Melot,* 712 F. App'x at 721 ("A money judgment . . . simply remedies a past wrong; [i]t isn't executory and doesn't require the court to supervise any future changing conditions."); *see also FTC v. Apex Capital Grp.*, CV 18-9573-JFW(JPRx), 2021 WL 7707269, *3 (C.D. Cal. Sept. 3, 2021) ("Even if the judgment debtor has not yet paid the judgment . . . it is not 'prospective,' since it is not executory and involves no judicial supervision of changing conduct or conditions." (quoting 12 James Wm. Moore et al., *Moore*'s *Federal Practice – Civil* § 60.47 [1][b] (2021)).

even a money judgment . . . . That a court's action has continuing consequences, however, does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)."[54]

Elite challenges this conclusion by pointing to *Zimmerman v. Quinn*, a case where the Tenth Circuit Court of Appeals held a monetary judgment qualified as prospective within the meaning of Rule 60(b)(5).[55] In *Zimmerman*, an eighteen-month delay in transferring interests under a judgment imposed unanticipated tax liability once the transfer occurred.[56] The court concluded, "this is the type of changed circumstance contemplated by the equitable relief provision in Rule 60(b)(5)."[57] Elite argues its circumstances mirror *Zimmerman* because after *AMG Capital Management* the Stipulated Order is "no longer equitable"—"the monetary relief and compliance conditions were never allowed by statute"—thus, the Order should be modified.[58]

But "the Rule 60(b)(5) language . . . doesn't allow a court to provide relief from any judgment, even assuming it's inequitable; it only allows for relief from judgments that have prospective application or effect."[59] The first inquiry then is not whether the judgment is still equitable—which is the inquiry Elite asks the court to consider in applying *Zimmerman*—but rather whether it is prospective.[60] To that question, Elite merely declares the judgment is

---

[54] *Twelve John Does*, 841 F.2d at 1138.

[55] 744 F.2d 81 (10th Cir. 1984); *see* Dkt. 169 at 5.

[56] *Zimmerman*, 744 F.2d at 82.

[57] *Id.* at 82.

[58] *Motion to Vacate* at 5 (citing *Zimmerman*, 744 F.2d at 83).

[59] *U.S. v. Melot*, 712 F. App'x at 720–21.

[60] *See* Fed. R. Civ. P. 60(b)(5) (providing relief when "applying a judgment *prospectively is no longer equitable*" (emphasis added)).

9

prospective and enumerates the components of the judgment it believes are prospective, without citing any binding or persuasive authorities to support its position.[61]

This case differs from *Zimmerman* in that the changed circumstance—an intervening change in law—does not create a new prospective monetary cost. Rather, Elite's argument is that the changed circumstances prospectively make the monetary judgment inequitable. But, this does not change the monetary judgment to impose a new prospective element, as was the case in *Zimmerman*. And no authority presented defines Elite's judgment in such a way that it qualifies as prospective under Rule 60(b)(5), even assuming the judgment is now inequitable under *AMG Capital Management*. On the contrary, the great weight of persuasive authority establishes that equitable monetary judgments awarded to the FTC are not prospective and thus Rule 60(b)(5) relief is unavailable.[62]

The court is particularly persuaded by *FTC v. Ivy Capital*, a recent decision in which a federal court in Nevada faced the same question presented here: whether a previously granted judgment awarding the FTC restitution and disgorgement could be vacated under Rule 60(b)(5) in light of the intervening *AMG Capital Management* decision.[63] The *Ivy Capital* court denied vacatur because Rule 60(b)(5) only applies to prospective injunctive relief, and the prior judgment imposed equitable monetary relief which is properly characterized as "a present remedy for a past wrong" rather than prospective relief.[64] The court is further persuaded by *FTC*

---

[61] *Motion to Vacate* at 6–7.

[62] *See FTC v. Ivy Cap., Inc.*, 340 F.R.D. 602, 607 (D. Nev. 2022) ("The equity referenced in Rule 60(b)(5) applies to prospective relief, not the equitable monetary relief that movants challenge here."); *FTC v. Nat'l Urological Grp., Inc.*, No. 1:04-CV-3294-CAP, 2021 WL 5774177, at *3 (N.D. Ga. Sept. 30, 2021); *FTC v. AH Media Group, LLC.*, 339 F.R.D. 612 (N.D. Cal. 2021).

[63] *Ivy Cap.*, 340 F.R.D. at 607.

[64] *Id.* (quoting *Cal. By & Through Becerra v EPA*, 978 F.3d 708, 713–17 (9th Cir. 2020)).

*v. National Urological Group*, *Inc.*, which reached a similar conclusion.[65] The court there held, "Rule 60(b)(5) does not apply here because the [monetary] Contempt Judgment is retroactive rather than prospective as it awards monetary damages for past wrongdoing."[66]

The court concludes the Stipulated Order judgment is not prospective. The monetary judgment provides redress for past harms. Even assuming the judgment is inequitable due to *AMG Capital Management,* this does not change the character of the judgment to render it prospective. Thus, Elite is not entitled to vacatur under Rule 60(b)(5).

### III.     Elite is not Entitled to Vacatur Under Rule 60(b)(6)

As noted, Rule 60(b)(6) provides relief from judgment "only in extraordinary circumstances and only when necessary to accomplish justice."[67] Elite argues that in the Tenth Circuit, an intervening change in law by the United States Supreme Court qualifies for Rule 60(b)(6) relief.[68] In response, the FTC argues recent Tenth Circuit precedent holds that a post-judgment change in law only justifies 60(b)(6) relief when it arises in a related case.[69] The court agrees with the FTC.

A brief history of relevant cases will add context to the parties' arguments. In 1958, the Tenth Circuit Court held that "[a] change in the law or in the judicial view of an established rule

---

[65] 2021 WL 5774177 at *2–3.

[66] *FTC v. Nat'l Urological Grp., Inc.*, 2021 WL 5774177, at *3 (N.D. Ga. Sept. 30, 2021) ("Rule 60(b)(5) does not apply here because the $ 40 million 2017 Contempt Judgment is retroactive rather than prospective as it awards monetary damages for past wrongdoing.").

[67] *Cashner*, 98 F.3d 572, 579.

[68] *Motion to Vacate* at 8–10.

[69] *FTC's Response* at 18. The FTC also argues Elite's deliberate choice to settle renders Rule 60(b)(6) altogether inapplicable because the Rule "is not for the purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests." *Id.* at 16 (quoting *Cashner*, 98 F.3d at 580); *see also Johnson*, 950 F.3d at 703 ("The sort of 'free, calculated, and deliberate choices' that may undermine a party's request for Rule 60(b)(6) are things like settlement agreements that have not worked out for the party[.]" (internal citations omitted)). Because the court concludes Elite's Rule 60(b)(6) claim fails for other reasons, it does not address this argument.

of law is not such an extraordinary circumstance which justifies [Rule 60(b)(6)] relief."[70] Yet nearly twenty years later the court of appeals granted 60(b)(6) relief to a party in *Pierce v. Cook & Co.* after a post-judgment change in law.[71] The court distinguished *Pierce*, calling it an "extraordinary situation" because the post-judgment change in law arose "out of the same accident" pending before the court.[72] On the heels of *Pierce,* the Tenth Circuit granted 60(b)(6) relief in two other cases—*Adams v. Merrill Lynch, Pierce, Fenner & Smith*[73] and *Wilson v. Al McCord Inc.*[74]—due in part to a change in law. This seemingly conflicting precedent did not go unnoticed[75] and the court of appeals provided some clarity in subsequent decisions. It explained that *Pierce* "created a limited exception," providing 60(b)(6) relief for a post-judgment change in law only when it occurs in a related case.[76] *Adams* and *Wilson* were distinguishable because in both cases the law did not change post-judgment, rather, it changed during the pendency of the litigation.[77] In recent years, the Tenth Circuit has consistently denied post-judgment relief for a subsequent change in law "if that change did not arise in a related case."[78]

---

[70] *Collins v. City of Wichita, Kans.*, 254 F.2d 837, 839 (10th Cir. 1958).

[71] *See Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) (en banc).

[72] *Id.* at 723.

[73] 888 F.2d 696 (10th Cir. 1989).

[74] 858 F.2d 1469 (10th Cir. 1988).

[75] *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1491 n.9 (10th Cir. 1994).

[76] *Sproull v. Union Tex. Prod. Corp.*, 944 F.2d 911 (10th Cir. 1991) ("In *Pierce,* this court, in an en banc decision, and in an unusual fact situation, created a limited exception to *Collins*: relief may be granted under Rule 60(b) when the post-judgment change in the law arises out of the same accident as that in which the plaintiff was injured."); *see also Van Skiver v. United States*, 952 F.2d 1241, 1243–45 (10th Cir. 1991) ("[W]hen the post-judgment change in the law did not arise in a related case, we have held [it] does not justify relief under Rule 60(b)(6)" (internal citations and quotations omitted)); *Johnston v. Cigna Corp.*, 14 F.3d 486, 497 (10th Cir. 1993) ("Absent a post-judgment change in the law in a related case, however, we have held that a change in the law or in the judicial view of an established rule of law does not justify relief under Rule 60(b)(6) (internal citations and quotations omitted)).

[77] *See Sproull*, 944 F.2d at 911 ("We thus distinguish both [*Adams* and *Wilson*] in that the moving parties had presented their legal issues to the court for relief and had not wholly surrendered prosecution of its claims.").

[78] *Bird v. Wyoming Att'y Gen.*, 779 F. App'x 546, 548 (10th Cir. 2019) (internal citation and quotation omitted) (upholding a denial of relief from judgment due to a change in law in an unrelated case and explaining "our precedent forecloses relief" in this situation and "it is beyond debate" that the district court did not abuse its

  This precedent forecloses Elite's 60(b)(6) claim here.  Elite argues it is entitled to relief from judgment because *AMG Capital Management,* a completely unrelated case, changed the law.[79]  In doing so, Elite relies heavily upon *Pierce, Adams,* and *Wilson.*[80]  But the law clearly establishes those cases relied on narrow and specific exceptions to the rule in this Circuit that a litigant is not entitled to post-judgment relief based on a subsequent law change arising from an unrelated case.[81]  When confronted with this precedent by the FTC,[82] Elite offered no substantive reply.  It continued to rely on *Adams* and *Wilson* and did not address the newer cases cited.[83]  Without a legal or factual basis to hold otherwise, this court must deny Elite's request for 60(b)(6) relief.

## CONCLUSION

  For the reasons stated, Defendants' Motion to Vacate the Judgment Pursuant to Rule 60(b)[84] is DENIED.

  SO ORDERED this 23rd day of January, 2023.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

discretion); *see also Ross v. Bush*, 704 F. App'x 771, 773–74 (10th Cir. 2017); *Sindar v. Garden*, 284 F. App'x 591, 596 (10th Cir. 2008); *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. State of Utah*, 114 F.3d 1513, 1522 n.2 (10th Cir. 1997).

[79] *Motion to Vacate* at 7–12.

[80] *Id.* at 8–10.

[81] *See, e.g.*, *Sproull*, 944 F.2d at 911.

[82] *FTC's Response* at 18 ("More recently, the Tenth Circuit held that when a post judgment change in law does not arise in a related case, a change in the law does not justify relief." (citing *Ross*, 704 F. App'x at 773 and *Van Skiver*, 952 F.2d at 1245)).

[83] Dkt. 186 at 10; *see generally id.* at 8–11.

[84] Dkt. 169.